CARRIE BERTHA HAWKINS, Respondent, THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, July 6, 1914.

1. NEGLIGENCE: Damages: Proximate Cause. Where defendant, a railroad company, negligently furnished a car with a defective brake to a Milling Company and an injury resulted to one of the Mill Company's servants by the concurring force of that negligence and also the negligence of the Mill Company, so that it is reasonable that both directly contributed to the injury and the latter negligence would not alone have sufficed to produce it, the defendant is liable notwithstanaing it may not have anticipated the interference of the latter force which, concurring with its own negligence, produced the damage.

2. ———: ———: ———: Independent Intervening Cause. This does not mean that a defendant should be held liable for all the actual consequences of his wrongful acts when they are such as no one, with the fullest knowledge of the circum-

stances, would have considered likely to occur.  But if defendant was negligent' and that negligence concurred with the negligence of another in proximately producing an injury to plaintiff's husband, then defendant is liable.  The negligence of the mill company, in this case, while a concurring cause, was not an independent cause, since it did not supersede the original cause, nor would it, alone and of itself, have produced the injury.

3. ————: ————: ————.  A mill hand was killed by a car, which was uncontrollable on account of a defective brake, striking a footbridge left across the track.  The injury was a natural result of the brake failing to work and followed as a natural and continuous sequence thereof under the known conditions in existence at that place.  It was an injury that could have been reasonably foreseen as naturally and likely to follow if the car became uncontrollable.  Consequently, it cannot be said that the negligence as to the brakes was not one of the proximate causes of the injury.

4. ————: Carriers of Freight: Delivery of Defective Cars: Liability for Injury to Servant of Consignee.  When a railroad delivers loaded cars to a consignee upon the consignee's switch to be unloaded by the consignee's servants, the railroad is liable to the servants of the consignee for injuries received in consequence of defective appliances under the general principles of law applicable to negligence.

5. ————: ————: ————.  Where the freight consigned is carried over several connecting carriers, the liability of the final carrier is the same if it or some other railroad owned the paticular car which was defective.

6. ————: Defective Appliance: Evidence.  Defendant was required by law to carefully inspect the brakes and the inspector testified that had certain cotter pins been out he would have noticed it and replaced them.  Under these circumstances evidence that other cotter pins in the car were out, beside the one causing the defective brake, was admissible, not as tending to show an act of negligence different from the one pleaded, but as tending to contradict the inspector as to the inspection of the car and throwing light on the care with which he did it.

7. ————: ————: ————.  It was not error to prove the earning capacity of deceased since that enabled the jury to form an estimate of the damages accruing to plaintiff by reason of the death of her husband.

8. ————: ————: ————: Testimony as to How Appliance Worked Immediately After the Accident.  Evidence that the brake was tried immediately after the accident and that the chain would remain tight, as though the brake was applied when

it was not, though a bolt was not in place, was not error as being expert evidence on the question whether the pin was out at the time of the accident. It was merely evidence of an actual condition of the brake shown to have existed immediately after the accident as tending to throw light on its condition immediately before the injury.

9. INSTRUCTIONS: Covering Contributory Negligence. Contributory negligence did not appear inherently in plaintiff's evidence. Hence, plaintiff's instruction covering the facts on which she asked a recovery did not have to include the question of contributory negligence. In such case, it was a defense to be pleaded, proved, and relied upon by defendant the same as any other defense.

10. PLEADING: Suits under Sections 5426 and 5427: Stating Cause of Action. Sections 5426 and 5427 give a cause of action different from the one in 5425. Plaintiff suing under the former for damages only and not for a penalty, could sue for any amount, within the statute, she deemed herself damaged. The petition, therefore, did not fail to state a cause of action because it did not ask for the full amount allowable under the statute.

11. SETTLEMENT AND RELEASE: Covenant not to Sue. Where a written instrument acknowledged receipt of $1000 from one of two joint tortfeasors was clearly a mere covenant not to sue and not a release of the cause of action, the question of whether or not the plaintiff intended to release the cause of action, notwithstanding the language of the covenant, was properly withheld from the jury where it clearly appeared from plaintiff's testimony that she did not intend to give up her cause of action and had no conception or understanding of the question propounded to her by defendant on the question of release. As there was no ambiguity or uncertainty in the written instrument, and no evidence of any intention other than the one expressed therein, it controls, and the court did not err in refusing to submit the question of plaintiff's intention in signing the instrument.

Appeal from Jackson Circuit Court.—*Hon. Kimbrough Stone,* Judge.

AFFIRMED.

*Martin L. Clardy* and *Edward L. White* for appellant.

(1) The plaintiff's petition failed to allege facts sufficient to constitute a cause of action and the de-

murrer should have been sustained at the close of the plaintiff's evidence. Fuchs v. Railroad, 167 Mo. 620; Beasley v. Transit Co., 148 Mo. 421; Plefka v. Knapp, etc. Co., 145 Mo. 316; York v. Railroad, 117 Mo. 405; Casey v. Transit Co., 116 Mo. App. 235; 205 Mo. 721; Clark v. Railroad, 219 Mo. 541. (2) The court erred in admitting incompetent questions and answers on the impaneling of the jury. State v. Hoffman, 99 N. E. 295; State v. Brown, 188 Mo. 451; State v. Bethume, 25 S. E. 181; Theobald v. Transit Co., 191 Mo. 395; Commonwealth v. Vanhorne, 188 Pa. St. 143; 41 Atl. 461; State v. Mysenberg, 171 Mo. 1; Ryan v. State, 115 Wis. 488; 92 N. W. 271. (3) The court erred in giving improper and illegal instructions to the jury on behalf of the plaintiff. Riegel v. Biscuit Co., 169 Mo. App. 514; Gilson v. Railroad, 76 Mo. 286; Hill v. Drug Co., 140 Mo. 440; Abbott v. Mining Co., 112 Mo. App. 557; Percell v. Railroad, 126 Mo. App. 43; Toncrey v. Railroad, 129 Mo. App. 596.

*John G. Paxton, John H. Atwood* and *William B. Bostian* for respondent.

(1) The defendant owed the duty to the servants of the Milling Company to furnish cars to be handled by them free from defects from which they might sustain injury. Roddy v. Railroad, 104 Mo. 234; Fassbinder v. Railroad, 126 Mo. App. 563; Strayer v. Railroad, 170 Mo. App. 514; Sykes v. Railroad, 117 Mo. 713. (2) Defendant is liable though the negligence of Waggoner-Gates Milling Company's servants may have concurred in bringing about the death of deceased. Newcomb v. Railroad, 169 Mo. 409; Moon v. Railroad, 48 N. W. 679, 46 Minn. 106; Asher v. City of Independence, 163 S. W. 514. (3) The liability of the carrier in any such case is the same whether it owned the car or not. Sykes v. Railroad, 117 Mo. 713. (4) The fact that the plaintiff received $1000 from

Waggoner-Gates Milling Company and gave them a covenant not to sue is no defense to plaintiff's action. Arnet v. Railroad, 64 Mo. App. 368; Judd v. Walker, 158 Mo. App. 156.

TRIMBLE, J.—Plaintiff sues for damages sustained by the death of her husband which she alleges was caused by the negligence of the defendant.

The husband was an employee of the Waggoner-Gates Milling Company. A switch from defendant's road led to the plant of this company and ran east and west between its elevator on the north and its mill on the south. The mill had a platform about four feet high, five feet wide and sixty feet in length, alongside the mill and next to the switch track. Across the track in the elevator was a door with a sill and a flight of steps leading to the ground. A heavy board fourteen feet long extended from this doorway across the track to the platform, and was used by the mill employees as a footbridge to pass from one building to the other without descending to the ground. The mill scales were between the mill and elevator and under the track, and this board was from a foot to three feet west of the west end of the scales.

The defendant railroad would deliver cars loaded with wheat and consigned to the milling company and place them on the switch at a point east of the plant, and, after setting the brakes, would leave them there. When the mill employees desired to unload a car they would go to this point, release the brakes on the nearest car, and by means of a "pinch bar" start it toward the scales, the track being slightly down grade. One of the mill employees would be on top of the car and at the proper time would apply the brakes and stop the car on the scales where it would be first weighed, then the wheat would be unloaded, the weight of the empty car obtained, and then the footbridge across the track would be turned to one side and the empty car pushed

on west to a point where later the railroad company would take it away. The footbridge would be replaced as soon as the empty car had passed.

Late in the afternoon of May 4, 1911, the defendant placed six cars loaded with wheat on the switch at the east end thereof. These cars were coupled together and the brakes on each were set. The next morning the mill hands moved one car down to the scales and unloaded it in the manner above described. They then went to the next car. One of the men, without looking to see if the brake shoes were against the wheels, took a club and struck the brake chain a sharp blow to see if it was taut. If it was, this indicated that the brakes were set. The chain was taut and the man got upon the car and unloosed the brakes. The car was then uncoupled from the others and by means of the ''pinch bar'' was started along the track toward the scales. It moved so slowly that the man on the car did not attempt to tighten the brakes till he was very near the scales. When he did so he found that, although he had turned the brake wheel until it was tight the brake did not work and would not stop the car. He called to plaintiff's husband who was on the platform to ''chock'' the car, that is, place a billet of wood in front of the wheel. Plaintiff's husband ran along the platform, sprang off to the ground and ran around to meet the car intending to chock it. He did not get in the way of the car, but when perhaps ten feet from it, the car, with its load weighing 100,000 pounds, passed on over the scales, struck the footbridge and threw it around to one side. The footbridge struck plaintiff's husband on the jaw and killed him instantly. Plaintiff brought this suit and recovered judgment below.

Defendant urges that its demurrer to the evidence should have been sustained; that the injury was caused by the independent, intervening negligence of the mill hands, unconnected with any negligence of de-

fendant; that the mill hands were negligent in leaving the footbridge across the track while engaged in moving a car down to the scales and within a few feet of the bridge; and that this negligence caused the injury. This claim may also possibly involve the charge of negligence against the mill hand on the car in calling deceased into a place of danger after it was discovered that the brake would not work. As to this last feature, however, it would seem that it would fall more properly within the domain of the question whether deceased was guilty of contributory negligence. At any rate, the negligence of the mill hands would still consist in leaving the footbridge across the track while bringing a car down to it, and the calling to deceased to chock the car was a mere incident in the failure of the brake to stop the car. Calling to deceased to chock the car was not a command to get in the way of the footbridge, and telling him to chock it was only a feature of the inability to stop the car by means of the brake.

Was this negligence on the part of the mill hands an independent intervening cause of the injury? If defendant was negligent in furnishing a car, with a defective brake, to the milling company, and the injury was caused by the concurring force of that negligence and also the negligence of the mill company, so that it is reasonable that both directly contributed to the injury and the latter negligence alone would not have sufficed to produce it, the defendant is liable notwithstanding it may not have anticipated the interference of the latter force which, concurring with its own negligence, produced the damage. [Newcomb v. New York Central, etc. R. Co., 169 Mo. 409, l. c. 427; 1 Sherman & Redfield on Neg. (6 Ed.), Sec. 31 and Sec. 39; Moon v. Northern Pacific Railroad, 46 Minn. 106.] If the negligence of the defendant and the milling company concurred to proximately cause the injury both would be liable. [Asher v. City of Independence, 163 S. W.

574.] Of course, this does not mean that a defendant should be held liable for all the actual consequences of his wrongful acts, when they are such as no one, with the fullest knowledge of the circumstances, would have considered likely to occur. But if defendant was negligent and that negligence concurred with the negligence of the milling company in proximately producing an injury to plaintiff's husband, then defendant is liable. On the feature of the case now under discussion, clearly the negligence of the mill company's servants, while a concurring cause, was not an independent cause. It did not supersede the alleged original cause nor would it alone and of itself have caused deceased's death regardless of the alleged defective brake. The demurrer ought not to have been sustained, therefore, on the ground that the mill company's negligence was an intervening independent cause.

As to whether or not the alleged negligence of the defendant was a proximate cause, the evidence shows that the injury was a natural result of the brake failing to work and followed as a natural and continuous sequence thereof under the known conditions in existence at that place. The foot bridge was maintained across the track at all times except when taken down temporarily to let cars pass. It remained up while cars were being brought down to the scales as above indicated, and this course had been pursued for a long time prior to the accident, and was fully known to the servants of defendant who placed the loaded cars in position on the east end of the switch. The injury resulting from a car getting beyond control on account of a defective brake was one that could have been reasonably foreseen as naturally and likely to follow if the car did become uncontrollable. This is shown by the fact that when cars were placed there by defendant, the brakes on each car were set. Consequently, it cannot be said that if defendant was negligent as

to the brakes, such negligence was not one of the proximate causes of the injury. [1 Sherm. & Redf. on Neg. (6 Ed.), Secs. 26a, 28, 29 and 34.]

Was the defendant shown to have been negligent, or was there evidence from which the jury could reasonably draw an inference of negligence? When a railroad delivers loaded cars to a consignee upon the consignee's switch, to be unloaded by the consignee's servants, the railroad is liable to the servants of the consignee for injuries received in consequence of defective appliances, under the general principles of law applicable to negligence. [Sykes v. St. Louis and San Francisco Ry. Co., 178 Mo. 693, 1. c. 712; Roddy v. Mo. Pac. Ry. Co., 104 Mo. 234; Fassbinder v. Mo. Pac. Ry. Co., 126 Mo. App. 563; Strayer v. Quincy, Omaha, etc. R. Co., 170 Mo. App. 514.] This being so, it would seem that the liability of the final carrier would be the same whether it or some other railroad owned the particular car alleged to be defective. The defendant, therefore, owed deceased the duty of ordinary care to see that the brakes of the car in question were in proper working order. Was there evidence from which the jury could reasonably find that there was a lack of that care?

The Federal regulations covering shipments of this nature required that the safety appliances on the cars should be thoroughly and closely inspected, and a man was employed whose business it was to do this. Now, it is true he says he inspected the brakes on this car and found the bolt of the brake in proper place with the cotter pin in its place in the slot at the end of the bolt. But he had no personal recollection of the brakes in this car and only swears they were in proper condition because the record sheet covering that car, with others, showed no memorandum of anything being wrong with the car. Plaintiff's evidence was to the effect that the cotter bolt was not in place in the brake clevis, so that the turning of the brake wheel drew

the chain until a bolt on the chain caught on a timber under the car and made the chain taut but did not press the brake shoes against the wheel. In this condition, while the turning of the wheel would apparently set the brakes tight, yet as a matter of fact the brake was not against the wheel at all. Plaintiff's testimony tended further to show that the hole in which this clevis bolt worked was rusty, indicating that it had been out a long time, and that other cotter pins in other bolts of said car were not in place. These cotter pins were small wedge-shaped split pieces of metal that ran through a slot in the end of a bolt and then were spread to keep them from slipping out. In this way the bolt would be prevented from coming out of place the same as if a tap had been screwed into said bolt. Defendant contends that evidence as to other cotter pins being out on this car was inadmissible, and cites many cases which hold that where a recovery is sought upon one or a number of acts of negligence, evidence of other negligent acts is inadmissible. This is no doubt true. But in this case defendant's evidence was to the effect that, if the cotter pin had been out, its absence would have been noted by the inspector and another put in. Defendant was also claiming that the blow which the mill hand struck the taut chain caused the cotter pin or bolt, and perhaps both, to jump out. Now, evidence that other cotter pins were not in place on the car would tend to show that the blow did not cause the one in question to jump out and it would also tend to throw light upon the character of the inspection given the car by the inspector. The absence of other cotter pins was not offered to show that this particular one was not in place but to show that if the car was inspected at all that inspection was not with the ordinary care required of such inspector. The absence of other cotter pins was not an act of negligence relied upon as a cause of the injury but was a circumstance to be con-

sidered in passing upon the evidence of the man who says he carefully inspected the car and if a cotter pin had been out he would have noted its absence and replaced it. Consequently, the admission of such evidence as to the absence of other cotter pins was not error. By actual trial, after the accident, it was found that turning the wheel would tighten the chain but would not set the brake. The car, prior to the start toward the scales, was coupled to the other cars on which the brakes were set. After being uncoupled and the brakes released, the car had to be started by the "pinch bar." So that defendant cannot claim that the fact that the car stood still where it was placed showed that the brake was in condition when defendant left the car there. From all of which we think there was enough from which the jury could infer that the brake was out of fix when the car was set there and when it was inspected, and that there was a lack of ordinary care in setting the car there with the brake in that condition when the particular duty of the defendant's inspector was to examine these safety appliances of the car minutely and with care. That was the very end and purpose for which he was employed and put at that work. If the brake was defective at the time of the inspection, then the master knew or might have known by the exercise of ordinary care of its dangerous and defective character, and the petition alleged this fact when it charged that defendant negligently furnished a car that was defective and unsafe. [Fassbinder v. Mo. Pac. Ry. Co., 126 Mo. App. 563, l. c. 570; Young v. The Shickle, etc. Iron Co., 103 Mo. 324; Tateman v. Railroad, 96 Mo. App. 448.] The petition was not therefore defective in failing to allege that the bad condition of the brake had existed for such a length of time as would enable the defendant to discover and repair the same by the exercise of reasonable care. Nor can it be correctly said that the petition alleged a negligent condition that could not have

been anticipated or could not reasonably have been anticipated or could not reasonably have been expected to result in injury to the deceased. Inasmuch as it was the precise and particular duty of defendant's inspector to examine the brake as one of the safety appliances, it was certainty a condition which ought to have been observed, and since the defendant's servants were cognizant of the use and presence of the footbridge across the track and the movement of the loaded cars to and upon the scales by the mill hands, certainly the result of a defective brake, whereby a car would get beyond control, could reasonably be anticipated. The petition charged that the defendant's servants had known of the footbridge and of the method of moving cars onto the scales while it was across the track and the evidence shows this to be true. The petition, therefore, stated facts showing the injury to have resulted from the negligence charged as a proximate cause. The question of what is a proximate cause is ordinarily one of fact for the jury to determine in view of the accompanying circumstances. [Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469.] As the defendant knew of these conditions and circumstances, it cannot escape liability on the ground that it could not be expected to anticipate or foresee the results flowing from such negligence.

As we read the record the evidence does not show that the brake shoe was against the wheel before the car was started toward the scales. The men who started it did not observe that feature of it but took it for granted that it was in working order because the chain was taut. The condition of the brake was such that one setting it would think that it was tight and holding the wheel when it was not. In other words, there is no evidence to show, as a matter of fact, that the brake shoe was against the wheel and holding the car. Nor did the evidence show that the striking of the chain while it was taut caused the pin to jump

out. The chain did not become less taut when it was struck, nor is there evidence to be found in the record showing that the striking of the chain was likely to cause the pin to jump out. The evidence of the witnesses that the chain would remain tight though no bolt was in place was not error as being expert evidence on the question whether the pin was out at the time the car was setting on the track. It was merely evidence of an actual condition of the brake shown to have existed immediately after the injury as tending to throw light on its condition immediately before the injury. Witnesses who tested the brake could tell what it would do then even though they knew nothing about the pin prior to that time.

Plaintiff's instruction No. 1 purported to cover the whole case and directed a verdict if the jury found the facts as plaintiff claimed them to be. Nothing was said therein about deceased's contributory negligence. This was set up in defendant's answer. It is held that an instruction which purports to cover the whole case and directs a verdict is erroneous if it ignores the issue of contributory negligence and that issue is not presented by some other instruction. [Riegel v. Loose-Wiles Biscuit Co., 169 Mo. App. 513.] But, of course, this is true only in cases where the evidence tends to show negligence on the part of the one injured. Unless the question of contributory negligence is presented by some evidence in the case, no such issue arises. In the case at bar, defendant offered no testimony covering the happenings at the time deceased was killed. Consequently, unless plaintiff's evidence showed facts raising the question of contributory negligence no such issue arose. Plaintiff's evidence did not show that deceased was negligent nor contain an inference to that effect. The car was going very slow, the man on the car called to plaintiff's husband, standing on the platform of the mill, to chock the car. There is no evidence that deceased knew at this moment that the car

was wholly uncontrollable. Nor did he get in the way of the car itself. He was ten feet or more from it when the footbridge, being thrown to one side, struck and killed him. His attempt to obey the command was an innocent act done without opportunity for consideration or for knowing the situation so far as what the car would do is concerned. He was killed before he got near enough to the car to do anything in the way of stopping it. Plaintiff's evidence did not contain any elements tending to show contributory negligence. It was not for plaintiff to show that the deceased was not negligent; that was for defendant to do. It not only offered no testimony on that question but asked no instruction thereon. By so doing it is presumed to have abandoned that defense. [Schroeder v. St. Louis Transit Co., 111 Mo. App. 67, l. c. 78.] We cannot assume that the reason defendant refrained from asking an instruction on contributory negligence was in order that there would be reversible error in the case. Defendant's failure to ask an instruction on contributory negligence can only be considered as arising from the fact that it recognized there was no contributory negligence shown by the facts surrounding the tragedy. If it was, it was defendant's duty to bring it out in the evidence. Instruction No. 1, therefore, was not erroneous.

Other objections are made to the rulings on evidence and in the giving of instructions but we do not think they are meritorious since the objections are based on views contrary to those expressed in the foregoing opinion.

It is urged that as the petition prayed for only $7500 it did not state a cause of action under the statute. The suit is not brought for a penalty as provided in section 5425, but for damages under sections 5426 and 5427, the latter of which provides that the jury "may give such damages, not exceeding ten thousand dollars, as they may deem fair and just, with reference

to the necessary injury resulting from such death.''
By ''necessary injury'' is meant pecuniary injury.
The cause of action given under the above-mentioned
two sections is not the same as that given under sec-
tion 5425. Each must rest on its own statute. [Casey
v. Transit Co., 205 Mo. 721, l. c. 724.] In Nicholas v.
Kelley, 159 Mo. App. 20, and Roberts v. Trunk, 166 S.
W. 841, it is held that section 8523, Revised Statutes
1909, although referring in express terms to section
5425, provides a recovery for damages only and not
by way of penalty. And so it is with reference to
the sections under which this suit is brought. Being
for damages and not for a penalty, plaintiff could sue
for any amount, within the statute, she deemed herself
damaged. The jury did not see fit to allow as much as
plaintiff asked in her petition. The point that the peti-
tion did not state a cause of action because it did not
ask for the full amount of the damages allowed by the
statute is without merit.

Before the filing of this suit plaintiff brought a
suit against defendant and the milling company. The
latter paid her one thousand dollars and a written
agreement was entered into to dismiss as to said mill-
ing company and in which she covenanted not to again
sue the milling company on the cause of action set up
in the petition or arising directly or indirectly out of
the death of her husband. Thereupon that suit was
dismissed and this suit was instituted against the de-
fendant herein. The written instrument was clearly
a covenant not to sue and was not a release of the
cause of action. [Arnett v. Mo. Pac. Ry. Co., 64 Mo.
App. 368; Judd v. Walker, 158 Mo. App. 156.] It nei-
ther declared a release nor did it purport to be in full
satisfaction of the claim, but on the contrary expressly
covenanted and agreed not to sue the milling company.
On cross-examination of plaintiff, defendant asked her
a long question in reference to the payment and receipt

of the $1000 from the milling company in which was included the element that she was settling the cause of action with the milling company, knew she could not sue them any more and intended to release and discharge them from the cause of action. To which she replied "yes sir." The court refused to submit to the jury the question whether or not, notwithstanding the terms of the written agreement with the milling company, the plaintiff intended to release the cause of action and discharge said company in consideration of said $1000, and this refusal is assigned as error. The terms of the written agreement with the mill company were not ambiguous. And the other answer of the plaintiff showed that all she did was to take the advice of her counsel and sign the agreement pursuant thereto; that she did not remember the terms of the agreement; that while she could not hope to secure or obtain anything more from the mill company, she had no thought of releasing the railroad but was going to prosecute her claim against it; and that the terms of the written agreement, as read over to her, expressed her intentions in the matter. Under this state of the evidence, the court did not err in refusing to submit the question of plaintiff's intention in signing the agreement. There is no evidence of any intention other than the one expressed in the written agreement. It is fully and clearly expressed therein and controls. Plaintiff is an ignorant negro woman and her answer of "yes sir" to a question which required her to make a nice legal distinction in order to truthfully and intelligently answer it, ought not to be deemed evidence of an intention contrary to the written instrument especially when her evidence thereafter artlessly shows that she had no such contrary intention.

It was not error to prove the earning capacity, etc. of deceased, since that enabled the jury to form an estimate of damages accruing to plaintiff by rea-

Grain Co. v. Railroad.

son of the death of her husband. [Boyd v. Railroad, 249 Mo. 110.]

The questions propounded to the jurors on their *voir dire* did not assume that plaintiff was going to get a verdict nor did they assume that plaintiff should receive as much or more than any white woman without regard to station or circumstances. The questions merely went to the point whether, if under the evidence and the instructions the jury found for plaintiff, they would be influenced by the fact of plaintiff's color alone. Clearly, under the law, plaintiff would be entitled to the same amount as any white woman suffering the same pecuniary damages, if defendant was liable. The law would not give her any less merely because she was black. The defendant was in no way prejudiced by the questions.

The judgment must be affirmed. It is so ordered. All concur.