ANDREW A. CAMPBELL, Respondent, v. AUNT JEMIMA MILLS CO., Appellant.

In the Kansas City Court of Appeals, November 6, 1922.

1. MASTER AND SERVANT: Negligence: Leaving Timbers Scattered in Passageway Where Same Constituted Dangerous Obstruction to Employee, Held, Negligence. Leaving timbers lying in the middle of a dark passageway in such a manner as to constitute a real and dangerous obstruction to an employee who did not know and who had no reason to believe they were thus left, is negligence.

2. ———: ———: Act of Foreman in Permitting Timbers to Obstruct Passageway, Held Act of Master. The act of defendant's foreman at quitting time in ordering and permitting timbers to be and remain in passageway causing the same to be obstructed, instead of having them piled out of the way, thereby rendering aisle safe, held the act of the master.

3. ———: ———: Injury Resulting from Concurring Causes Though Particular Manner in Which Same was Brought About Might not Have Been Foreseen, Held Actionable. Where defendant was negligent in leaving timbers in dark passageway thus rendering it unsafe and dangerous, the concurrence of the light company's act in turning off lights would not relieve defendant, even though particular manner in which injury was brought about was due to combination of circumstances not reasonably to be anticipated.

4. ————: ————: Contributory Negligence: Contributory Negligence of Plaintiff Using Dark Passageway Without, a Light, Held Question for Jury. Where plaintiff, a watchman, in defendant's mill, was injured by stumbling over timbers lying in a dark passageway which he was attempting to use without a light, *held*, that his contributory negligence was a question for the jury.

5. INSTRUCTIONS: Instructions Precluding Recovery if Plaintiff Failed to Use Flashlight in Going Through Dark Passageway, Held Properly Refused as Entirely Disregarding Issue of. Plaintiff's Contributory Negligence Under the Circumstances. In an action by plaintiff, a watchman, to recover damages for injuries received while using a dark passageway in basement of defendant's mill, the refusal of instructions which unqualifiedly told jury in effect that if plaintiff failed to use a flashlight he could not recover, *held* proper, because the instructions ignored the question of whether plaintiff exercised ordinary care to obtain a flashlight, and whether after failing to get one, he thereafter displayed a lack of ordinary care in attempting to go through passageway under the circumstances.

### ON REHEARING.

6. PLEADING: Petition: Allegations of Petition Held Broad Enough to Permit Evidence Showing Negligent Obstruction of Passageway. A petition alleging that defendant negligently permitted timbers to be in dark passageway, rendering the passageway dangerous and unsafe, *held* sufficiently broad to permit the introduction of evidence showing the negligent leaving of the timber anywhere in passageway.

7. INSTRUCTION: An Instruction Submitting Question of Unsafe Condition of Passageway, Held Sufficiently Clear. An instruction permitting recovery for injuries to employee, received by stumbling over timbers left in dark passageway, if the jury found that the unsafe and dangerous condition of passageway was caused by timber being not only *in* the passageway but *out in* the passageway, *held* sufficiently clear to inform jury of the real issue in the case, that is, that the timbers were piled out into the aisle.

Appeal from the Circuit Court of Buchanan County.—
*Hon. L. A. Vories,* Judge.

AFFIRMED.

*Homer C. King* and *Strop & Mayer* for respondent.

*William E. Stringfellow* for appellant.

TRIMBLE, P. J.—Plaintiff was injured by falling over some timbers left lying in the passageway of the basement of defendant's mill. He brought this suit, alleging that his injury was caused by the defendant's negligence, and recovered a verdict and judgment for $2000 from which the defendant has appealed.

The mill was a large one occupying a building of several stories. On week-days, plaintiff was employed to run the elevator, but on Sundays and other holidays when the mill was not in operation, he was the day watchman. As such, it was his duty to go around through the building and basement, and, at various points therein, register on a clock his presence at the particular point and time indicated. The system thus registering the watchman's rounds was connected with the Western Union Office in such way that a failure to register at any point, within a period or leeway of eight minutes of the time specified for doing so, would cause the Western Union to send a man to investigate and see what was wrong.

The passageway, eight feet wide and 260 feet long, ran the entire length of the basement from a point on the east side thereof, a few feet south of the bottom of the elevator shaft, to the extreme west side of the building. Through it many of the employees, when the mill was in operation, passed to and fro in the performance of their duties. The watchman's fourth registration point was at the east end of the passageway and his fifth was at the west end thereof.

Some days, possibly a week or more before the date of plaintiff's injury, twelve or fifteen timbers (six-by-sixes or six-by-eights, length not shown), were taken into the basement for the purpose of strengthening the

supports to the floor above. They were taken in through the elevator shaft, and, were "nicely piled" in the passage "close up" against two of the pillars that stood at intervals along the south side of said passageway. The east end of the pile was in the neighborhood of forty-five feet or more west of the east end of the passageway. Just how far out into the passageway these timbers extended when thus piled, is not shown. But the evidence in plaintiff's behalf is that they did not constitute an obstruction as thus "piled up in the first place." They were piled "right at the edge of the aisle; right against the columns." Plaintiff was working at his elevator when they were brought in and afterwards knew they were piled there in that way. He also, at different times throughout the week preceding the date of his injury (which occurred on Sunday), left his elevator and walked south to the east end of the passageway and looking along it, saw the workmen using the timbers in their work of shoring up the basement ceiling. He does not admit (and we think this is important and is a matter which defendant entirely overlooks), that on the Sunday morning he was hurt he knew that any timbers were *left* in the passageway or that any were left *out from the side* thereof so as to constitute an obstruction. His testimony is "I seen it (the pile of timber) when they put it in there, long *before it was used.*"

On Saturday afternoon, preceding the injury, the men, engaged in using the timbers to shore up the ceiling, worked until 5:30 and had *used up all but three* of the timbers. In the process of picking out the particular timber desired, the men engaged thereat "naturally rolled them out" and the three they didn't use were left on the floor, lengthwise of the passageway, not close up to the pillars on the south nor piled one upon the other but slightly apart, so that the outermost one was nearly in the middle of the way, being three-and-one-half feet from the columns against which the timbers were originally

211 M. A.—43

piled, and leaving four-and-one-half feet of the passage-way unobstructed or hardly that, if we count out the slight space occupied by certain things which, in defendant's photographs A. and D. appear to project a little way into the aisle from the space on the north side thereof. The evidence in plaintiff's behalf clearly carries the necessary inference that when the workmen quit at 5:30 Saturday afternoon the three unused timbers were left out in the passageway farther from the columns than the pile had been, for Stiff, one of the men at work there, in addition to saying they "rolled them out" in selecting the particular timber wanted, testified that when 5:30 or quitting-time came, he said to Cooper, the man then in charge of the work, "we better pile up these logs" but Cooper refused, saying "Its quitting time, to hell with them." Plaintiff knew nothing of this as he was operating the elevator and in it carried the men up and out of the basement, they *taking their tools with them.*

Next morning (Sunday), at seven o'clock plaintiff arrived at the mill to begin his duties as watchman for the day. In making his rounds, the watchman always carried a flashlight which, furnished by the company, was kept in a cupboard in the engine room on the ground floor. Plaintiff looked in the cupboard for it but none was there and he so told Brown the engineer, who was the only other person on the premises. Brown said "I have one here in my desk; I will fix it up for you." Upon receiving this promise, plaintiff, without a flashlight, started on his first round to be made in the hour from seven to eight o'clock for the purpose of registering his presence at each of the points required. The evidence in plaintiff's behalf is that a flashlight was not carried because the basement or passageway was insufficiently lighted *when the electric lights were burning,* current for which was supplied by the light company of the city; that when the lights *were on,* the basement was sufficiently lighted to enable the watchman to go

through it without a flashlight, but there were one or two dark places in the building where a flashlight was needed, and besides this, the evidence is that "the lights would go off anywhere from a few minutes to an hour every once in a while."

Plaintiff made his first round in the hour beginning at seven o'clock, and, of course, in going from the fourth to the fifth registration point, went along the passageway from east to west passing the place where the timbers had been originally piled and where the three unused timbers had been left. He says, however, that he did not see the timbers there; nor did he know they were there or that they were lying out in the passageway. In the hour beginning at eight o'clock he made a second round and again passed along the passageway but again saw no timbers. As he made these two rounds the lights that usually burned on Sunday were burning.

At nine o'clock he was again in the engine room upstairs ready to begin his third round when the lights in the building went out, being shut off by the light company in order to make some repairs needed on the line. No notice of intention to turn off the lights was given, and defendant herein was in no way to blame therefor, nor is it charged or claimed that there was any negligence on the part of defendant in this regard.

After Brown had promised plaintiff to fix up the flashlight he had in his desk, and while plaintiff was out on his rounds without a flashlight, Brown did fix up the flashlight, but instead of putting it in the cupboard where the watchman's flashlight was usually kept, he laid it on his desk which was across the room from the cupboard where it was in plain view had plaintiff looked for it there. He did not do so, however, but looked only in the cupboard and, not finding it there, concluded that Brown (who by that time had left the building) had not fixed it as he said he would, and plaintiff then started on his third round without a flashlight. The first few registration points were where daylight was available, but after

registering at the fourth place, on the east end of the passageway, the plaintiff started along it to the fifth registration place, and says the passageway was "dark as a dungeon." There was half window at the west end of the passageway, the daylight from which plaintiff could see from where he was, and, with this as an objective or goal to keep him on the right course, he started along the passageway towards the window light with his arms outstretched so that, if he did get out of his course, he upon touching the things on either side, could correct his course and keep in the middle of the passageway. There was a general rule of the company that this passageway should be kept "absolutely clear" of obstructions. Plaintiff says that, in getting out and taking into the basement boxes of milling materials, or working there, things would be left for the time being or for a few minutes, but as soon as possible they were to be shoved out of the way, and nothing was "expected to be left in the passageway over night." And it also appears that plaintiff was told by the Superintendent it was his duty "any time you see any obstructions in that aisle to remove them." When plaintiff reached the place where the three unused timbers lay he stumbled over them, and, falling, broke his hip.

The negligence charged in the petition is that defendant "negligently and carelessly permitted said passageway to become and to be dangerous and not reasonably safe" in that, while defendant had a rule that the passageway should be kept clean and free of all timber and debris, yet defendant "had negligently and carelessly permitted timber and debris to be and remain in said passageway." As there was no debris, but only timbers, in the passageway and it was the timber over which plaintiff stumbled and fell, the "debris" feature of the charge drops out of the case.

The answer was a general denial, coupled with the charge that whatever injuries plaintiff received "arose out of the ordinary risks of the business which plaintiff

assumed and that whatever injuries he received, if any, were caused by his own failure to take proper care in looking out for his own safety, and that said failure on his part directly contributed to his injury.''

In determining whether the demurrer to the evidence should have been sustained, doubtless the first thing to be settled is whether there was any negligence for which the defendant might be liable. The neglignce charged in the petition is merely permitting the timbers to be and remain in the passageway. The record does not disclose whether or not the men finished the work for which the timbers had been brought there. From the fact that they *took their tools away,* an inference might perhaps be drawn that they had finished. However, be this as it may, it would seem that since it was necessary for timbers to be brought into the basement and as plaintiff was aware of their having been brought in and of their presence as *originally piled,* it was *not* negligent to leave timbers piled ''close up'' against the columns as they had been. But to pull timbers out to nearly the middle of the pasageway and then, in violation of the rule, leave them there, where they would constitute a very real and dangerous obstruction to one who did not know, and who had no reason to believe, they were thus left, would be negligent. And if such negligent act was done by one for whose act the defendant is responsible, it might be held liable. The question of whether Cooper was defendant's foreman at the time the timbers were left out in the aisle was submitted to the jury by instructions on both sides and the verdict in plaintiff's favor disposes of that matter, since there was ample evidence to show that he was. Stiff said that he was, and swore that defendant's general foreman Jackson told him when he was employed that he was to work under Cooper and if he didn't obey Cooper's orders Cooper would ''fire'' him. And Jackson, defendant's witness, when asked if he didn't tell Stiff he was to take directions from and work under Cooper, said at first that he didn't remember

whether he did or not and finally admitted that he may have told Stiff so "part of the time." The contention that Cooper's act was a mere refusal to help Stiff pile the timbers out of the way is untenable. What he said was, in effect, an order to let them lie where they were and Stiff obeyed him. His act was the act of the master under these conditions. It ought not to be said that, conclusively, negligence in leaving the timbers out in the passageway and thus rendering it unsafe and dangerous, was not a proximate cause of the injury simply because the lights were turned off by the Light Company. Even if that act were negligent (which we do not say), and concurred in producing plaintiff's injury, yet, if defendant was negligent in what it did, the concurrence of the other would not relieve defendant. [Obermeyer v. Logeman Chair Co., 229 Mo. 97; Harrison v. Kansas City, etc., Light Co., 195 Mo. 606, 623; Hawkins v. Missouri Pac. R. Co., 170 S. W. 459.] Nor is it correct to say that there could be no liability for thus leaving the timbers out in the aisle because the injury was due to a combination of circumstances not reasonably to be anticipated. Leaving them out in the aisle was such an act as one could reasonably anticipate might result in an injury though the particular manner in which it could be brought about might not be foreseen.

But the petition charged negligence merely in leaving the timbers in the passageway and not that they were pulled out into the aisle, and plaintiff's instructions submitted the case on such negligence merely, while defendant's evidence was that they were left piled close up against the columns as they were originally placed there. Consequently, it would seem that the case as pleaded and submitted did not state the real negligence, if any, of the master, though there was *controverted* evidence of negligence in leaving timbers pulled out into the aisle where one would be very likely to stumble over them. For this reason, if for no other, the judgment ought not to be permitted to stand

Campbell v. Aunt Jemima Mills Co.

But if plaintiff was guilty of contributory negligence as a matter of law, the case should be reversed outright instead of being remanded for a new trial. Therefore the question of plaintiff's contributory negligence must be disposed of. This would seem to involve the question of the care plaintiff exercised in two respects. 1. In what he did to obtain and make use of a flashlight which the master usually furnished as an appliance for his use in making his rounds. 2. In his attempting to go through the dark passageway without a flashlight. It is urged that as plaintiff failed to avail himself of the appliance furnished by the master, but attempted to make his rounds without it, and the lack of the flashlight having resulted in his not avoiding the timbers, he cannot recover. But plaintiff looked twice for the flashlight in the place where it was kept and supplied by the master, and no flashlight was there. True, he might have found one had he looked elsewhere, but it is for the jury to say whether under all the circumstances, plaintiff was negligent in failing to look elsewhere, he thinking that Brown had neglected to keep his promise. Defendant, in its instructions, did not submit the issue on this the first branch or basis of the plaintiff's alleged contributory negligence, but merely attempted to submit only the second branch thereof, namely, whether his attempt to go through the passageway without a flashlight was negligent. On this last branch it is urged that as plaintiff must be held to have known the timbers were there when he thus attempted to go through without a light, he was conclusively negligent. The charge that plaintiff must have known, or conclusively should have known, the timbers were there, likewise appears to rest on two grounds, to-wit: 1. Because he knew timbers were taken into the basement and knew they were piled where they were originally placed. But he also knew that the timbers were *used* by the workmen in shoring up the ceiling, and it does not appear that he knew that any were left unused. 2. That as plaintiff went through

the passageway twice while the lights were burning, he must be conclusively deemed to have seen the three unused timbers lying where they were, and, therefore, in attempting to go by them without a light, he was negligent as a matter of law. The evidence, however, does not conclusively show that, in spite of his denial that he saw them or knew they were there, he must have seen them or known of their presence or in the exercise of ordinary care should have done so. While the evidence in his behalf shows there were certain lights in the passageway when he went through on his first and second rounds, one of which lights was almost directly over the west end of the timbers and two others some thirty feet or more away, yet these were *red* lights. There was a 100-candle power white light a short distance to the southwest of the timbers but it was not in the passageway but off in the sprinkler system room and between it and the timbers were the planks forming the open framework or body of the fence and gate therein which, at the place where the timbers lay, formed the south side of the passageway. And the evidence is that these planks cast heavy shadows on the floor; that the lights which were used on Sunday were small lights and that along where these timbers lay, and while the lights were on, "it is light enough that a man can see to go through providing there is no obstructions, but the way the lights are so situated that it casts a shadow from the sprinkling system and from the board way going in to the sprinkling system. The shadows were cast down on the floor that sometimes a person will imagine they are going onto something when it is nothing but the shadow." It is true, plaintiff knew that timbers as originally piled had been there for a week or more prior to that time, but he also knew that the workmen had been *using* them in the performance of their work. As heretofore stated, he saw the pile when it was put there "long before it was used," and afterwards during the work he saw that the workmen were using them. There is no evidence that he

knew, when he took the workmen with their tools out in his elevator late Saturday evening, that they had not used three of the timbers and had left some of these out near the middle of the passageway. If, as he says, there were heavy shadows there that hid the presence of the three timbers as he went by, we do not see how we can say that, conclusively, he must have seen and must have known they were there, or that if he had exercised ordinary care he would have done so. The fact that defendant's engineer, who was placed on the stand by plaintiff as one of his witnesses, testified that defendant's photographs of the passageway, showing the location of the three timbers as he found them that morning when he came back to the plant upon learning that plaintiffs was hurt, were taken by means of the same lights that were burning that Sunday morning, does not conclusively show that the timbers were as distinct and apparent to the eye as plaintiff went through the first two times, as they appear in the photographs. For it is well known that, by long exposure, a photograph will, with little light, distinctly portray objects that are not distinctly revealed to the eye in a short time. The fact that it was plaintiff's duty to remove obstructions from the passageway, *if he saw any*, did not make him conclusively negligent if he failed to *minutely search* for such things, especially as the rule was that things were not to be left overnight in the passageway, and this was early Sunday morning when no workmen had been about the mill since 5:30 the evening before.

We entertain the view that the record presents evidence from which a case for the jury may be shown and therefore the cause should be reversed and remanded.

With regard to defendant's refused instructions, as heretofore stated, defendant did not attempt to submit contributory negligence as affected by his unavailing efforts twice to get a flashlight, or the question of his care in not getting the one Brown fixed. All of said refused instructions except C. and H., which were practical-

ly the same, unqualifiedly told the jury in effect that if plaintiff failed to use a flashlight he could not recover. This ignored the question of whether plaintiff exercised ordinary care on his part to obtain a flashlight and whether, after failing to get one, he thereafter displayed a lack of ordinary care in attempting to go through the passageway under the circumstances disclosed herein.

Instructions C. and H. told the jury that if the defendant "had provided sufficient lights in the basement at or near the point where the timbers could be seen" by a man in the exercise of ordinary care while walking along said aisle, then the verdict should be for defendant. This only referred to the electric lights in the basement near the timbers, which concededly were not burning when the injury occurred, and ignored the question of the plaintiff's inability to obtain the flashlight. If the instruction was intended to refer to the times he passed the timbers on his first and second rounds, then the instruction should have been so worded as that the jury could understand that, and intelligently apply it to the effect of plaintiff's act in thereafter going through in the dark. As it was drawn it was liable to be misunderstood by the jury.

The judgment is reversed and the cause is remanded for a new trial. All concur.

### ON REHEARING.

BLAND, J.—We have again carefully examined the record, the briefs and the suggestions of counsel on both sides, filed before and after the last argument of this case, and are satisfied with what was said in the original opinion written by TRIMBLE, P. J., except that we have arrived at the conclusion that the petition is broad enough to cover the negligence shown by the testimony and that the case was properly submitted to the jury.

The petition alleges, after setting out the facts in reference to the location of the passageway, the duties of

plaintiff, the absence of light and that the passageway was dark, that plaintiff while passing along the passageway—

"... came in contact with some lumber which had been negligently and carelessly left by the defendant in said passageway; that there was at all the times herein mentioned a rule of the defendant company that said passageway should be kept clean and free of all lumber and debris, but that prior to said 21st day of. November, 1920, the defendant had negligently and carelessly permitted lumber and debris to be and to remain in said passageway, and that thereby said defendant had negligently and carelessly permitted said passageway to become and to be dangerous and not reasonably safe to the plaintiff and other of defendant's employees using .said passageway; that because of the negligence and carelessness of the defendant in leaving said lumber and said debris in said passageway, and because of the negligence and carelessness of the defendant in permitting said passageway to become and to be dangerous and not reasonably safe, as aforesaid, the plaintiff was caused to and did fall down," etc.

It will be noted that the petition did not state at what point in the passageway the timbers were piled. It merely alleges that they were left and permitted to be in the passageway, rendering the passageway dangerous and unsafe. The petition did not allege negligence on account of the timber bing piled along the side of. the passageway and was sufficiently broad to permit the introduction of evidence showing the leaving of the timber anywhere in the passageway so long as it was shown that such leaving was negligent. The submission, which was had by plaintiff's instruction No. 1, has the jury find "the defendant, by and through its foreman, Cooper, if you find he was a foreman, had carelessly and negligently left some timbers in said passageway and that said timbers were in said passageway on said 21st day of November, 1920, and that the presence of said timbers

*out in* said passageway, if you so find, rendered said passageway dangerous and not reasonably safe.'' (Italics ours.)

This instruction submits that if the jury find that because of the unsafe and dangerous condition of the passageway caused by reason of the timbers being not only *in* the passageway but *out in* the passageway, the jury, upon finding other essential facts, should find for plaintiff. We think that the instruction, while probably not ideally worded as to clearness, is sufficiently so to inform the jury of the real issue in the case, that is, that the timbers were piled out into the aisle rather than being piled close up to the columns.

The judgment is, therefore, affirmed. All concur.