JAMES BERRYMAN, RESPONDENT, v. PEOPLES MOTORBUS COMPANY OF ST. LOUIS, APPELLANT:—54 S. W. (2d) 747.

St. Louis Court of Appeals. Opinion filed June 28, 1932.

Motions of appellants for rehearing overruled December 20, 1932.

 See 66 S. W. (2d) 141.

*Carter, Jones & Turney, James E. Garstang* and *Richard S. Bull,* for appellant, The People's Motorbus Company of St. Louis.

*T. E. Francis* and *B. G. Carpenter* for appellant, St. Louis Public Service Company.

*Everett Hullverson* and *Staunton E. Boudreau* for respondent.

BECKER, J.—Plaintiff, in his action for damages for personal injuries, recovered a judgment in the sum of $3500 against the Peoples Motorbus Company of St. Louis, and the St. Louis Public Service Company, defendants. We have here for consideration as a consolidated case the appeals of each of the defendants.

On the 10th of December, 1928, between six-thirty and seven P. M., plaintiff boarded a southbound Broadway street car of the defendant, St. Louis Public Service Company, intending to ride to Broadway and Victor Street, 2500 south, in the neighborhood of where he lived. Instead, however, plaintiff fell asleep and when he awoke the car was approaching 5200 South Broadway, at which corner he got off the car with the intention of crossing to the east side of Broadway to take a northbound car back to his original destination.

According to plaintiff, upon alighting from the street car he stood

within three feet of the west rail of the southbound track awaiting an opportunity to cross to the east side of Broadway. While thus standing and awaiting the passing of some automobiles that were going north, plaintiff saw approaching him from the north an automobile, and behind it a motorbus being driven south on Broadway. The automobile passed in the car tracks to the east of plaintiff, but, according to plaintiff, the motorbus, which was following the automobile perhaps a quarter of a block, came on without a warning signal of any kind and approached without decreasing its speed, and as the front of the bus got to plaintiff it made a turn to the west and the left side of the bus struck plaintiff and knocked him down. Plaintiff said it was the left side of his body that was struck by the bus and that he was knocked unconscious. Plaintiff described his position in the street as being at the regular crossing place, "right under the big light."

According to the driver of the motorbus it was close to seven o'clock and the electric street lamps were lighted. He testified that he was turning in for the day; that he was driving eighteen miles an hour and could have stopped his bus within thirty-five feet. The bus was being driven immediately west of the west rail of the southbound tracks and about nine feet from the west curb of Broadway; that when first he saw plaintiff, plaintiff was three feet east of the west curb at a time when the front of the bus was eight feet to the north of the plaintiff and six feet to the east of him; that plaintiff was evidently trying to get to the east side of Broadway "in a dog-trot—sort of staggering out;" that he sounded his horn and swerved the bus to the left and brought the bus to a stop, straddling the center of the north and southbound tracks; that the bus traveled forty-eight feet from the time he saw plaintiff to the point where the bus was brought to a stop; that he got out of the bus and loooked and saw plaintiff between the rails of the southbound street car tracks "in a getting-up position on one knee;" that while plaintiff was in this position the witness saw a southbound street car approaching, traveling thirty or thirty-five miles an hour, and then distant fifty feet from plaintiff; that he did not hear any warning sounded by the street car, and that no attempt was made by the motorman to stop the speed of the car until the car was within fifteen feet of plaintiff when the brakes were put on, the wheels locked and the car "kept on coming in a sliding position—the wheels locked. This man was kneeling and it bumped him and knocked him down and bumped the man again and got him underneath the guard under the car." He stated the first time the car knocked plaintiff five or six feet, and the second time "the distance underneath the car was about two or three feet." According to this witness, after the car struck plaintiff it traveled eight or nine feet. When the car stopped "a part of plaintiff's body was underneath and a part in front of the car." At this point in

the examination of the witness he was asked: "How far could you see an object away? A. If looking for a man I could see him three or four blocks away." . . . Q. Under the conditions existing that night? A. Yes, sir. Q. It was that light and that clear? A. Yes, sir."

On cross-examination this witness stated he did not see plaintiff standing on the curb; that he was looking straight ahead and when asked "what prevented you seeing him before that," answered, "I didn't see him, that's all. Q. You were looking straight ahead and didn't see him? A. No, sir." The witness was unable to state whether or not the bus he was driving had struck plaintiff.

"Q. How far did the car knock him, hitting him the first time? A. I judge about eight feet, about the length of his body. . . .

"Q. What did the man do while the car was coming that fifty feet? What did he do? A. The old man?

"Q. Yes? A. He was getting up.

"Q. He was on one knee, you said. Now, did he get fully up on his feet while the car was going fifty feet? A. No sir."

Oliver T. Remmers, a witness for the defendant, Peoples Motorbus Company, testified that he was driving his automobile south on Broadway and saw the bus in question a block ahead of him; that he saw the bus turn slightly toward the left side of the street and make a sudden, almost right-angle turn to the left side of the street, then travel southwardly for a distance and stop on the east side of Broadway facing south; that when he had gotten to a point about the center of the block he saw an object lying on the southbound street car tracks between the two rails, and as he got within forty or fifty feet he saw it was a person. He drove his car to the curb and stopped, and as he was on the point of gettting out of his automobile he heard the gong of a street car and saw its lights. The car "was thrown in reverse prior" to striking plaintiff, and when plaintiff's body touched the trigger of the life guard beneath the car, the life guard fender in front of the trucks dropped to the pavement of the street; but the life guard did not pick up plaintiff's body because the car came to a standstill; that either the driver of the bus or a passenger of the street car got in front of the car, reached under the car platform and pulled the plaintiff out. The witness was positive that the accident occurred in the center of the block, where the bus made an abrupt turn without any change of speed. The bus was traveling twenty to twenty-five miles per hour.

Plaintiff's case was submitted to the jury solely upon an instruction predicating a recovery upon the humanitarian doctrine.

The appellant, St. Louis Public Service Company, urges here that the trial court erred in refusing to sustain its motion requiring plaintiff to elect upon which cause of action and against which defendant

plaintiff would proceed. The argument in support of this contention is to the effect that the opening statement of counsel for plaintiff and all of the evidence in the case showed that plaintiff's injuries were caused by the striking of plaintiff by the bus of the defendant, Peoples Motorbus Company; and further that all of the evidence tended to show that after plaintiff had been so struck and injured by the bus an appreciable interval of time had elapsed before he was struck by the street car of the defendant, St. Louis Public Service Company, and therefore there were two separate and distinct causes of action arising out of the separate, distinct and unrelated torts of two defendants, and therefore, the court erred in permitting these two causes of action to be united and tried in one suit.

The point is without merit. The facts in the case before us, as we have set them out supra, bring it within the rule that where "the concurrent or *successive* negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury." [1 Thompson on Negligence, sec. 75.]

Plaintiff was struck by the bus of the defendant, Motorbus Company, knocking the plaintiff between the rails of the tracks of the defendant, Public Service Company, and while plaintiff was endeavoring to get to his feet without the occurrence of any new and independent force or intervening efficient cause to break the connection between the original wrong of the motorbus company and the injury, the successive negligence of the defendant, Public Service Company, came into action, so that both negligent acts occured to produce the final and complete result. Under the rule of law quoted above, as well as the adjudicated cases, plaintiff was entitled to proceed against both tort-feasors if he so desired, and it follows that the motion requiring him to elect was properly overruled. [Floun v. Birger (Mo. App.), 296 S. W. 203; Miller v. United Rys. Co., 155 Mo. App. 528, 1. c. 540, 124 S. W. 1045; Newcomb v. Ry. Co., 169 Mo. 409, 69 S. W. 348; Krehmeyer v. Transit Co., 220 Mo. 639, 654, 655, 120 S. W. 78; State ex rel. v. Trimble, 302 Mo. 699, 708, 709, 258 S. W. 1013; Carr v. St. Louis Auto Supply Co., 293 Mo. 562, 239 S. W. 827; Vaughn v. Meier (Mo.), 246 S. W. 279; Meade v. Ry. Co., 68 Mo. App. 92; Reynolds v. Street Ry. Co., 180 Mo. App. 138, 168 S. W. 221; Willi v. United Rys. Co., 205 Mo. App. 272, 224 S. W. 86; Hawkins v. Ry. Co., 182 Mo. App. 323, 170 S. W. 459.]

At the close of plaintiff's case the defendant, Public Service Company, filed its demurrer to the evidence, which being overruled it elected to stand on its demurrer and here contends that since the evidence conclusively shows that all of plaintiff's injuries were received at the time he was struck by the motorbus, and that there was no

evidence that plaintiff received any injuries from being struck by the street car, the demurrers should have been sustained.

It is true plaintiff himself testified that the motorbus struck him and knocked him unconscious and ran over his foot and crushed it. However plaintiff's statement that the bus ran over his foot must be taken in light of his testimony that he was knocked unconscious when struck by the motorbus and knew nothing at all of having been hit by the street car.

And on cross-examination plaintiff testified that if anyone spoke to him at the place of the accident he had no knowledge or recollection of it; that he had been knocked unconscious.

Furthermore plaintiff himself testified that he had a bump on his head "as big as your fist;" but did not undertake to state definitely how he had received it. Then, too, plaintiff adduced as his witness August C. Hatton, the driver of the bus, who testified that he didn't know with certainty as to whether or not the bus hit plaintiff, but that it could only have been the side of the bus which struck plaintiff; *that while plaintiff was in the act of rising and while in a stooped position in the center of the car tracks, the street car struck plaintiff twice, the first time knocking plaintiff some eight feet.*

In this state of the record the jury might well have come to the conclusion that since plaintiff was struck by the motorbus and thereby knocked unconscious, and according to his own testimony was unaware of the fact that he had been struck by the street car, that so far as plaintiff himself was concerned, he was not able to state what injuries he had received either from the motorbus or from the street car, and from the testimony of the motorbus driver believe and find that some injuries were sustained by plaintiff when the street car struck and knocked plaintiff eight feet. In this view the demurrer of the defendant, St. Louis Public Service Company, was well ruled.

As is stated in Shearman & Redfield on Negligence (6 Ed.), sec. 122:

"Concurrent, as distinguished from joint, negligence arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs, or cooperates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial." [Bradley v. Becker (Mo.), 11 S. W. (2d), 8, l. c. 10; Carr v. St. Louis Auto Supply Co., supra, and cases cited therein.]

The appellant street car company further urges that its demurrer should have been sustained in that plaintiff had submitted his case to the jury solely upon the humanitarian doctrine and there was no

testimony within what distance the street car could have been stopped under the facts and circumstances in the case. There is in this record the testimony of Hatton, the driver of the motorbus, who testified that after he had brought his motorbus to a stop and had had time to get out of the bus, he observed plaintiff in the center of the southbound street car tracks endeavoring to rise to his feet and that the street car was bearing down upon him, then fifty feet away, with no effort made on the part of the motorman to lessen the speed of the car until the street car was within fifteen feet of plaintiff, at which time the motorman turned off his power and applied his brakes, and then brought the car to a complete stop, after striking plaintiff, within a distance of eight or nine feet. In other words, there is testimony which, if believed, shows that the street car was actually stopped at the speed it was going, within twenty-three feet, and also that the conditions that night were such—the weather clear and the light good—that anyone looking for a man could see him three or four blocks away. If this testimony is believed then the motorman of the street car, in the exercise of due care, could have seen plaintiff between the rails of the southbound street car track, when the car was fifty feet away, endeavoring to rise to his feet, which would have been in time for defendant's motorman to have brought his car to a complete stop in time to have avoided striking plaintiff.

The next complaint by defendant. Public Service Company, is to the giving of instruction numbered two at the request of plaintiff. It is urged that this instruction erroneously permitted a recovery against it upon a finding by the jury that the defendant's motorman failed to give plaintiff warning of the approach of the street car, when under the facts and circumstances in the case such failure could not have been the proximate cause of plaintiff's injury since plaintiff testified that he was lying upon the tracks in an unconscious condition and therefore the sounding of the street car gong could not have avoided the accident.

This argument however fails to take into consideration the fact that Hatton, adduced as a witness for plaintiff, testified that when he saw the defendant's street car fifty feet from plaintiff "he wasn't lying down. He was in a getting-up position on one knee. Q. How far was the street car away when you noticed him getting up in the track? A. Fifty feet." And on cross-examination this witness, when asked what plaintiff was doing while the car was going the fifty feet, he answered: "He was getting up. Q. He was on one knee you said. Now, did he get fully up on his feet while the car was going the fifty feet? A. No, sir. Q. What position was he in when the car hit him? A. One knee toward the ground and the other leg straightened out."

In light of this testimony reasonable minds might differ as to whether or not, had a gong been sounded, the plaintiff might not

thereby have become aware of the near approach of the street car and managed to get off the car tracks in time to have avoided being struck by the street car.

This is sufficient answer also to the contention that the said instruction numbered two was erroneous in that it permitted a recovery against the street car company upon a finding by the jury that the defendant's motorman failed to slacken the speed of the street car, since the testimony showed that the plaintiff was in the act of rising to his feet at the time the car was fifty feet from him, and continued in that endeavor up to the moment he was struck by the street car.

In taking up next the separate assignments of error on the part of the defendant motorbus company, we note first the assignment directed against plaintiff's instruction numbered one. It is urged that the instruction is erroneous in that it submitted to the jury, as an alternate ground of recovery under the humanitarian doctrine, the issue of the bus driver's failure to sound a warning of the approach of the bus. This is urged as error in that the evidence showed that plaintiff saw the bus approaching and therefore a sounding of warning would not have availed to prevent plaintiff from being struck. Plaintiff however testified that though he saw the bus approaching, he was not in the path of the bus, and that when the bus was almost upon him the bus swerved to the west of him. In this situation the jury might have found that had the driver of the bus sounded a timely warning before he changed the direction of the bus, plaintiff being thus warned, could have avoided being struck. [Banks v. Morris, 302 Mo. 254, 1. c. 266, 257 S. W. 482.]

Both appellants assign error in the instruction on the measure of damages, which authorized the jury in assessing damages that they might take into consideration such earnings, if any, plaintiff has lost or is reasonably certain to lose in the future by reason of his injuries, if any, and directly caused thereby. It is argued that possible loss of future earnings was improperly included as an element of damages in that there was no evidence that the plaintiff was reasonably certain to lose earnings in the future.

Plaintiff himself testified at the trial that the right foot "pains me all the time," and that his head bothers him "pretty often; that two or three times a week he has headaches;" and that "my foot pains me all the time. . . . At times it pains worse;" that since the accident he has to wear arch supports; that if he walks all day the foot swells up, becomes sore and pains; that when he gets home of an evening it is necessary for him to bath his foot in hot salt water.

The jury might reasonably find that plaintiff's ability to work and therefore to earn wages, would be impaired in the future, and we rule it was not error to include this element of loss of future earnings in the instruction.

The record discloses that the jury returned the following verdict:
"We, the jury in the above cause, find in favor of the plaintiff, and against both defendants on the issues herein joined and assess plaintiff's damages at the sum of three thousand five hundred dollars.

"$2,500 against The People's Motorbus Co.

"$1,000 against The Public Service Co. of St. Louis."

The record further shows that this verdict was received by the court and duly entered of record on the same day that it was rendered. Each of the defendants filed a motion in arrest of judgment on the ground that the verdict improperly and unlawfully apportioned damages between joint tort-feasors. On plaintiff's motion, at the same term, the court ordered the following words and figures "$2,500 against The People's Motorbus Co. $1,000 against The Public Service Co. of St. Louis" stricken from the verdict theretofore returned by the jury. Each of the defendants thereupon filed motions to set aside this order which were overruled, as were the motions in arrest of judgment.

The right of a court to amend a verdict after the discharge of the jury is limited to matters of form or clerical errors clearly made manifest by the record, but never to matters of substance required to be passed on by the jury, which, in their nature, are essential to the determination of the case and subject to dispute. It is therefore informalities and not material matters that the court may amend. [Meffert v. Lawson (Mo.), 287 S. W. 610.]

However, it has been held proper for the trial court to reject as surplusage any statement in a verdict that does not affect the real finding and to enter judgment upon such real finding. This was done in the early case of Hancock v. Buckley, 18 Mo. App. 459, l. c. 465. The court had before it a verdict which found upon the issues and then added that *the costs were to be divided between the parties,* and it was held that that part of the verdict of the jury, which divided the costs between the parties, was wholly outside of the issues submitted to them, and was properly treated as surplusage by the court.

In the case of Ranney v. Bader, 48 Mo. 539, the jury returned a verdict for plaintiff and assessed "his damages at $293, *with six per cent interest.*" Upon this verdict the court rendered a verdict of $293, saying nothing about the interest, treating that part of the verdict as surplusage. On appeal our Supreme Court held that the correctness of this action of the court was manifest since the law fixes the interest in accordance with the verdict; and the finding in that regard did neither good nor harm, and affirmed the judgment. And in State ex rel. Webster v. Knight, 46 Mo. 83, the verdict of the jury found for defendants "*they to pay the costs of this suit.*" The trial court refused to receive this verdict and discharged the jury, whereupon the defendant sought a writ of mandamus. In the course

of the opinion, directing a peremptory writ, our Supreme Court said: "The jury found for the defendant; the verdict was good and complete. The matter of costs was not in issue and was not submitted to them. That part of their verdict, therefore, was merely void and should have been disregarded as surplusage."

In the later case of Buttron v. Bridell, 228 Mo. 622, 129 S. W. 12, the jury returned a verdict finding the issues "in favor of plaintiffs and assessed their damages at the sum of $1700, *to be paid in equal installments of $850 by defendants.*" Thereupon the court told the jury the verdict was not in proper form and directed them to use one of the forms given them by the court. The jury again retired and brought in a verdict with the words "to be paid in equal installments of $850 by defendants," erased therefrom. This later verdict was accepted by the court, and judgment entered thereon, and on appeal our Supreme Court said: "The law and not the jury determines who are to pay the damages to be assessed in damage suits; and when the jury undertakes to impose one-half of the damages on each of the defendants it goes outside of and beyond its jurisdiction. If the jury had the authority to assess one-half of the damages against each defendant, then it had by virtue of the same authority, the power to assess nine-tenths or any other proportionate part thereof against one of them and the remaining part against the other. The jury possesses no such power and when it attempted to do so by adding to the verdict the words erased, it was acting beyond its authority. *These words had no legal force or effect whatever and were merely surplusage; and the court properly had them stricken out.*"

In light of the authorities we therefore rule in the instant case that since by their verdict the jury found "in favor of the plaintiff and against both defendants on the issues herein joined, and assess plaintiff's damages at the sum of $3500," the added words, "$2500 against The People's Motorbus Company. $1000 against The Public Service Company of St. Louis," were of no legal consequence, being wholly outside of the issues submitted to the jury, and were properly treated as surplusage by the court in rendering judgment upon the verdict.

Other points assigned as error, whether briefed or not, have been considered and found to be without merit.

Consequently in view of the conclusions reached herein it follows that the judgment of the circuit court should be affirmed. It is so ordered. *Haid, P. J.,* and *Nipper, J.,* concur.