## OLIVIA P. WRIGHT et al. v. ESTHER HETHERLIN et al., Appellants.

### Division One, March 1, 1919.

1   ADMINISTRATION: Ancillary Administrator De Bonis Non. After the former administrator has made final settlement, his settlement approved and he discharged, the probate court has power to appoint an ancillary administrator *de bonis non*, for the purpose of collecting a debt due the estate of a citizen who died in another State and which is there being administered. The constitutional provisions, in connection with the statutes carrying them into effect, confer ample power and jurisdiction to appoint such ancillary administrator. The legal representative appointed in the foreign state to administer the estate of a decedent there cannot sue in this state, and the beneficiaries of said estate are entitled to have some one appointed in this state to represent them in the collection of a debt due the estate.

2.  HOMESTEAD: Sale After Owner's Death. The head of a family did not in 1892 have the right to so dispose of his homestead by will as to defeat judgment debts against him. Under the Homestead Law as it stood from 1875 to 1895 the probate court had power in 1894, subject to the homestead right of the widow and minor children, to sell the homestead of a deceased head of a family against whom in his lifetime a judgment for debt was obtained in the circuit court in 1888 and revived against his administration in 1892.

3.  ————: ————: Kentucky Statute. The Homestead Statute of Kentucky is not like the Missouri Homestead Law from 1875 to 1895, and consequently decisions of Kentucky Courts upholding the right of a homesteader to dispose of his homestead by will furnish no valid ground for a like ruling concerning a Missouri homestead.

4.  PROBATE COURT: Judgment: Collateral Attack. Judgments and proceedings of the probate court as to all matters within its jurisdiction are impervious to collateral attack.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Woolfolk*, Judge.

AFFIRMED.

*D. A. Ball* for appellants.

(1) The probate court had no jurisdiction to appoint an administrator *de bonis non* of the estate of Charles C. Wells, deceased. The appointment was a nullity and wholly void. So were all the acts and doings of said Purse following said void appointment. The administration of the Charles C. Wells estate had been fully and finally settled by James R. Reeds, public administrator in charge of said estate, and he as such administrator had made his final settlement of said estate and his settlement had been approved by the probate court and he finally discharged. The only authority given to the probate court to appoint an administrator *de bonis non* is found in Sec. 46, R. S. 1889, Long v. Joplin Mining Company, 68 Mo. 432; Cary v. West, 139 Mo. 146; Byers v. Weeks, 105 Mo. App. 73; Pullis v. Pullis, 137 Mo. App. 294; Bick v. Tanzey, 181 Mo. 515; Norton v. Reed, 253 Mo. 236; Jones v. Schaff Bros., 174 S. W. 177; State ex rel. Harrington v. Pratt, 170 S. W. 418; Grayson v. Weddell, 63 Mo. 523. (2) The revival of the judgment obtained by James G. Reeds, Public Adminstrator in charge of the Charles C. Wells estate in 1888, was void, first, because the probate court had no jurisdiction to appoint Purse administrator *de bonis non* of the Charles C. Wells estate. Second, the judgment of revival was void, because the judgment on its face shows that process of court was had upon Lewis Holliday as an individual, and not as executor of the estate of Lemuel M. Wells. No process was served upon Job T. Wells and Emma J. Wells named in the will of Lemuel M. Wells, the remaindermen named in the will. Third, the judgment should have been revived, if at all, in the name of

James G. Reeds, Public Administrator ·in charge of the estate of Charles C. Wells. Bick v. Tanzey, 181 Mo. 515; Whitworth v. Barnes, 256 Mo. 468. (3) The land here in dispute was the homestead of Lemuel M. Wells at the date of his death. He and his wife and children had occupied it as a homestead since 1846. None of the debts allowed against his estate antedated the acquisition of the homestead. His creditors had no right or claim to it. He could, with the consent of his wife, have given it away by deed for no consideration other than love and affection. Therefore, we insist that what he could do by deed, he could do by his will. Seilert v. McAnally, 223 Mo. 505; Barnard v. Bateman, 76 Mo. 415; State ex rel. Stigo Co. v. Mason, 88 Mo. 222; Moor v. Wilkerson, 169 Mo. 334; Rose v. Smith, 167 Mo. 81; Kendall v. Bowen, 96 Mo. 142; Davis v. Lane, 88 Mo. 436; Reed Bros. v. Nicholson, 189 Mo. 396; Balance v. Gordon, 247 Mo. 119; Myers v. Myers, 89 Ky. 442; Pendergest v. Heekin, 94 Ky. 384. The Myers case, 89 Ky. 442, is directly in point and holds, under homestead law substantially like that of Missouri that homesteader can convey by will as he could do by deed. (4) "The probate of a will relates to the death of the testator and confers title from that time." Barnard v. Bateman, 76 Mo. 414. (5) The judgment rendered against Lemuel M. Wells in 1888, if it ever had been a lien on the real estate of said Wells, had expired long prior to the revival of the judgment in 1892. Therefore, the defendants, Job T. Wells and Emma J. Wells, had acquired title to the homestead land, under and by virtue of the will, and their title could not be affected ·by the revival of the judgment, even though the revival of the judgment be held good. Sec. 2127, R. S. 1909; Pullis v. Pullis, 157 Mo. 515.

*W. O. Gray* and *Hostetter & Haley* for respondents.

(1) The law in force at the time of the death of the homesteader, governs and controls the rights of all parties interested in the homestead tract. Ailey v.

Burnett, 134 Mo. 317; Register v. Hensley, 70 Mo. 189; Burgess v. Bowles, 99 Mo. 543; Davidson v. Davis, 86 Mo. 440. Lemuel M. Wells, the homesteader, having died in 1892, the law then in force is applicable. (2) Between 1875 and 1895 a homestead, on account of the wording of the Statute of 1875, was subject to sale for the payment of the deceased homesteader's debts, subject of course to the rights of his widow and minor children. Poland v. Vesper, 67 Mo. 727; Keene v. Wyatt, 160 Mo. 1; Balance v. Gordon, 247 Mo. 119; Armor v. Lewis, 252 Mo. 568; Sec. 2693, R. S. 1879. (3) The judgment of a probate court in matters within its jurisdiction is final and is impervious to collateral attack. Covington v. Chamblin, 156 Mo. 587; Rottmann v. Schmucker, 94 Mo. 144; Bingham v. Kollman, 256 Mo. 589; Wilson v. Wilson, 255 Mo. 536; Harter v. Petty, 266 Mo. 303; Bradford v. Wolfe, 103 Mo. 391; Johnson v. Beazley, 65 Mo. 254; Rogers v. Johnson, 125 Mo. 212. (4) Purse's appointment as administrator to take charge of the Charles C. Wells estate cannot be attacked in this collateral proceeding. Bradford v. Wolfe, 103 Mo. 395; Green v. Tittman, 124 Mo. 375; Headlee v. Cloud, 51 Mo. 301; Wetzell v. Waters, 18 Mo. 396; 1 Woerner's Am. Law of Administration, sec. 180; Johnson v. Beazley, 65 Mo. 256; Scott v. Crews, 72 Mo. 261.

RAILEY, C.—On February 2, 1915, Olivia P. Wright and others filed in the circuit court of Pike County, Missouri, their petition for the partition of about eighty-five acres of land located in said county. Esther Hetherlin and various other parties were made defendants in the above action. Under the pleadings, and on the trial below, there were three sets of claimants of the land sought to be partitioned. (1) Plaintiffs claim title through Theodore Purse, administrator *de bonis non* of the estate of Charles C. Wells, deceased, who purchased the land at an executor's sale during the administration of the estate of Lemuel M. Wells, deceased, who died testate in the year 1892, his will

being probated May 11, 1892. (2) The Fielden Estes heirs filed their separate answer, and at the trial claimed title to the above land through Fielden Estes, who purchased the same in 1888, when said land was sold under an execution, issued on a judgment obtained by Reeds, public administrator in charge of the estate of Charles C. Wells, deceased, against Lemuel M. Wells. The land when sold under above execution had already been set off and assigned as a homestead to said Lemuel M. Wells. The trial court held that the Fielden Estes heirs acquired no title to said land under the execution sale aforesaid, and no appeal was taken by them. (3) The defendants, Job T. Wells, the Hetherlin children and their father, T. Guy Hetherlin, claim title to the land in controversy, under and by virtue of the will of Lemuel M. Wells. Job T. Wells is a son, and the Hetherlin children are grandchildren of said Lemuel M. Wells.

The evidence tends to show that Lemuel M. Wells acquired title to the land in dispute in 1846; that with his wife and children he lived upon said land, and used it as a homestead to the date of his death, in April, 1892. In 1869, Lemuel M. Wells became largely indebted to his brother, Charles C. Wells, of West Virginia, whose estate was administered upon in that State. The debt of Lemuel M. Wells was a part of the assets of the estate of Charles C. Wells. On November 30, 1886, the probate court of Pike County, by an order entered of record, directed James G. Reeds, public administrator of said county, to take charge of the estate of Charles C. Wells, deceased, which said Reeds did, and proceeded to administer the same under the order of said probate court. On April 17, 1888, Reeds, as such administrator, obtained a judgment against Lemuel M. Wells, for $31,395.41. An execution was issued on this judgment and placed in the hands of the sheriff of Pike County, Missouri. The latter, on September 13, 1888, levied upon and sold the land in said county belonging to Lemuel M. Wells,

including the homestead in controversy, to Fielden Estes for about $5300. The purchase price for said land bought by Fielden Estes, was paid to J. G. Reeds, the public administrator of said county, in charge of the estate of said Charles C. Wells. Said J. G. Reeds, as such administrator, paid the purchase price of said lands to the executor of the Charles C. Wells' estate in West Virginia, on the order of the probate court of Pike County, Missouri. Thereaffter, said Reeds, as public administrator in charge of the estate of said Charles C. Wells, made his final settlement with the probate court aforesaid, on December 13, 1890, and was finally discharged by said court.

Lemuel M. Wells died in April, 1892, the owner of said land as a homestead. His widow Kate W. Wells, survived him, but he had no minor children at the time of his death. The widow continued to use the homestead until the date of her death, in August, 1914. Lemuel M. Wells' will was dated April 21, 1892, and was probated in Pike Couny, Missouri, on May 11, 1892. He gave to his wife a life estate in the homestead of 85 acres, and the remainder was to be divided between his son, John T. Wells, or his heirs, and Emma J. Hetherlin, or her heirs. Emma Hetherlin died after her father, leaving a husband and four children surviving her, who are the appellants in this cause.

Under the terms of the will of Charles C. Wells, the interest which testator had growing out of the notes which he held against his brother, Lemuel M. Wells, and which includes the homestead in controversy, was devised and bequeathed as follows: One-third to the children and heirs at law of his brother, Lemuel M. Wells, one-third to the children and heirs at law of his sister, Sadie Rachel Austin, and one-third to the children and heirs at law of his brother, J. D. Wells. The children and heirs at law of these two brothers of Charles C. Wells, viz., Lemuel M. Wells, J. D. Wells, and of the sister, Sadie Rachel Austin, are all parties to this suit, and are all plaintiffs in the case, except

Job T. Wells, and Emma Hetherlin's husband and heirs, who are defendants and appellants herein claiming all the title. The remaining defendants are the Fielden Estes devisees. Job T. Wells, and the Hetherlin heirs, appellants herein, being heirs at law of Lemuel M. Wells, have, by virtue of the will of Charles C. Wells, an interest, with the other heirs of Lemuel M. Wells, in the homestead tract in controversy, and this interest is set out in the petition and was accorded them by the trial court in the interlocutory decree appealed from.

After the death of Lemuel M. Wells, Lewis Holliday, who was named in the will as executor, qualified and administered on his estate, in the probate court of Pike County, Missouri.

On May 14, 1892, letters of administration were granted, in vacation of the probate court of Pike County, Missouri, to Theodore Purse, as administrator *de bonis non* of the estate Charles C. Wells, deceased, and his appointment was approved by said probate court, June 20, 1892. His bond was approved by the probate court.

Soon after the appointment of said Purse as administrator *de bonis non* aforesaid, he sued out a writ of *scire facias* to revive the judgment of April 17, 1888, for $31,395.41. The suit to revive said judgment was in the name of "Theodore Purse, Administrator *de bonis non* of the Estate of Charles C. Wells, deceased, against Lewis Holliday, Executor of the Estate and Will of Lemuel M. Wells, deceased." The judgment was revived as above stated, September 1, 1892. A number of claims and demands were allowed against the estate of Lemuel M. Wells, and the widow was given her usual allowances. Among the claims was the judgment of the Charles C. Wells estate, which was classified by the probate court on November 17, 1892, in favor of Theodore Purse, administrator *de bonis non* of the estate of Charles C. Wells, in the sum of $35,200, and assigned to the fourth class of demands.

The probate court records of Pike County show that on August 15, 1893, Lewis Holliday, executor of Lemuel M. Wells' last will, presented a petition in the usual form, accompanied by accounts and inventories, showing that the personal estate of Lemuel M. Wells was insufficient to pay the debts and allowed demands, and asking for an order of sale for the purpose of paying the debts and allowed demands, etc. An order of publication was then made by the probate court and the sheriff directed to serve all resident heirs with a copy of the order of publication, at least ten days prior to the next term of the probate court. It is agreed that the petition for sale of the real estate is in the usual form. At the next regular term of the probate court, to-wit, on November 13, 1893, the order of sale was made by the probate court. The order of sale recited, among other things, that an order of publication had been duly published in the "Bowling Green Times," and that the sheriff had served notices of a copy of such on all the heirs of Lemuel M. Wells, who resided in Pike County, and that such service was had on them more than ten days prior to the November term of said court. Among those named in the order, as being served by the sheriff, is E. Jennie Hetherlin. She was the Emma Hetherlin who is now dead and was the mother of the Hetherlin heirs. This order of sale authorized and directed the executor to sell, not only the homestead tract, but some other small tracts and certain lots in the village of Ashley.

On February 12, 1894, a renewed order of sale was made by the probate court, at its regular February term, 1894, containing the usual recitals that the sale had not been made under the original order.

Under date of May 18, 1894, the probate court records recite that the executor, Lewis Holliday, had sold the real estate in the order of sale described, including the homestead, and that Theodore Purse, administrator aforesaid, had purchased the homestead

tract for $1455, and an appropriate recital was made in such order, confirming the sale, and ordering the executor to execute, acknowledge and deliver to said Theodore Purse, administrator of the estate of Charles C. Wells, deceased, a deed conveying to him all the right, title and interest which the deceased Lemuel M. Wells had in said homestead tract at the time of his death, which deed the executor made, and delivered to said Purse, whom the plaintiffs claim held said title in trust for the beneficiaries of the Charles C. Wells' estate.

Theodore Purse was a son-in-law of Lemuel M. Wells, and died prior to the institution of this suit. His heirs at law are among the plaintiffs and are only claiming, with the other plaintiffs, as beneficiaries under the Charles C. Wells' will.

The files of the probate court relating to the sale of the homestead tract are printed in the abstract of record, and show that all the proceedings are regular, if the probate court had the power to appoint Theodore Purse administrator *de bonis non* of the estate of Charles C. Wells, deceased.

The $1455, which was paid for the homestead tract by Theodore Purse, went into and formed a part of the Lemuel M. Wells' estate, and was used by the executor, in connection with other funds in his hands, in paying other allowed demands in full, which belong to classes prior to the fourth class, including taxes, expenses of administration, etc., a portion of it being applied to the fourth class claim in favor of the estate of Charles C. Wells, deceased.

The trial court, after ascertaining and determining the interests of the parties in the land aforesaid, found and recited of record that it could not be partitioned in kind and ordered a sale of same, etc. Esther Hetherlin, Adeline Hetherlin, John Hetherlin, Ralph Hetherlin, T. Guy Hetherlin and Job T. Wells filed their motion for a new trial, which was overruled, and the cause duly appealed by them to this court.

I. It is contended by appellants, that the action of the probate court of Pike County, Missouri, on May 14, 1892, in appointing Theodore Purse as ancillary administrator of the estate of Charles C. Wells, deceased, of West Virginia, is *coram non judice* and absolutely void. If this contention be well grounded, the proceedings of the probate court of said county, in respect to above matter, can be inquired into in this proceeding.

*Ancillary Administrator De Bonis Non.*

Was the action of the probate court, in making said appointment, void? It appears from the record that about 1869, Lemuel M. Wells, while living in Pike County, Missouri, became largely indebted to his brother, Charles C. Wells, a resident of West Virginia, as evidenced by a promissory note; that said Charles C. Wells died January 14, 1885, testate, in West Virginia, and his estate was administered upon there. The probate court of Pike County, Missouri, on November 30, 1885, ordered James G. Reeds, public administrator of Pike County, to take charge of the estate of said Charles C. Wells, deceased, in said county. Reeds, as public administrator, took charge of said estate, and on the 17th day of April, 1888, obtained judgment in the circuit court of Pike County, Missouri, against said Lemuel M. Wells, on the note aforesaid, for $31,395.41. An execution was issued on this judgment, and through inadvertence, the *homestead,* with all the other land of said Lemuel M. Wells, was sold thereunder, for about $5300. The homestead of said Wells had been set off by commissioners before said sale. After the real estate of Lemuel M. Wells, outside of the homestead, had been exhausted, it left more than $25,000 still due and unpaid on said judgment. Reeds, as public administrator, made his final settlement with the probate court aforesaid, and was, on September 12, 1890, discharged accordingly.

Lemuel M. Wells died testate in April, 1892, and in his will, dated April 21, 1892, attempted to dispose of the homestead in controversy. At the time of his

death said Lemuel M. Wells was still indebted to the estate of Charles C. Wells, largely in excess of $25,000. Thereupon the probate court of Pike County, Missouri, on the date aforesaid, appointed Theodore Purse administrator *de bonis non* of the estate of Charles C. Wells. He qualified as such administrator and commenced suit in the circuit court of Pike County, Missouri, to revive the judgment aforesaid. The style of the cause last mentioned was "Theodore Purse, Administrator *de bonis non* of the Estate of Charles C. Wells, deceased, plaintiff, versus Lewis Holliday, Executor of the Estate and Will of Lemuel M. Wells, deceased, defendant."

The judgment of revival was entered on September 1, 1892, and said judgment, among other things, recites the following:

"Now at this day the parties appear by their respective attorneys, and this cause coming on to be heard, and being submitted to the court," etc.

In other words, the record recites that both parties appeared to the action. The judgment was revived for the sum of $35,200, and a transcript of same was ordered to be certified to the probate court of Pike County, Missouri, for allowance against the estate of Lemuel M. Wells. This judgment, as revived, was allowed and placed in class four by the probate court aforesaid.

Turning to Section 1 of Article 6 of the Constitution of 1875, we find that it contains the following provisions:

"The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in . . . probate courts."

Section 1023, Revised Statutes 1879, which is the same as Section 3225, Revised Statutes 1889, reads as follows:

"The Supreme Court of the State of Missouri . . . and the probate courts in this State shall be

courts of record, and shall keep just and faithful records of their proceedings.''

Section 34 of Article 6 of the Constitution of 1875 provides that:

''The General Assembly shall establish in every county a probate court, which shall be a court of record, and consist of one judge, who shall be elected. *Said court shall have jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration.*'' (Italics ours.)

The Legislature, in 1877, carried the above provision of the Constitution into effect by the enactment of Section 1176, Revised Statutes 1879, which reads as follows:

''*Said court shall have jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration.*'' (Italics ours.)

This section was carried into Revised Statutes of 1889 without change, and there appears as Section 3397.

The provisions of the Constitution of 1875 above quoted appear as new sections in said instrument. They confer upon the probate courts of this State general jurisdiction over the subjects above mentioned. We are of the opinion that the constitutional provisions aforesaid, in connection with the sections of the statute carrying the same into effect, conferred upon the probate court of Pike County, Missouri, ample power and jurisdiction to appoint Theodore Purse as ancillary administrator of the estate of Charles C. Wells, deceased. The legal representative of the latter estate in West Virginia could not sue in Missouri. The public administrator heretofore had made his final settlement of said estate in Pike County, and had been discharged. Here was a judgment for more than $25,000 in favor of the estate of Charles C. Wells still unpaid. After the death of Lemuel M. Wells, if the homestead could then be sold under the jurisdiction of the probate court for the payment of his

debts, the beneficiaries of the estate of Charles C. Wells were entitled to have some one appointed to represent the West Virginia estate in the collection of said debt. There was nothing in our laws which militated against the right of the probate court to make such an appointment. The contention of appellants, in respect to above matter, is accordingly overruled.

II. It is insisted by appellants that, aside from the question discussed in the previous proposition, Lemuel M. Wells had the right to dispose of the homestead by will. In order to determine this question it is necessary to consider the law as it stood in 1875 to 1895 in respect to homesteads.

Sale of Homestead.

Section 2693, Revised Statutes 1879, was passed in 1875. [Laws 1875, p. 60, sec. 1.] The same was carried into Revised Statutes of 1889 as Section 5439. It reads as follows:

"If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow; and such homestead shall, upon the death of such housekeeper or head of a family, be limited to that period. But all the right, title and interest of the deceased housekeeper or head of a family in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased, and the probate court having jurisdiction of the estate of the deceased housekeeper or head of a family shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto."

This court, in construing the law as it stood from 1875 to 1895, sustained the right of the probate court to sell the homestead for the payment of debts under such circumstances as are disclosed in this case. [Poland v. Vesper, 67 Mo. 727; Keene v. Wyatt, 160 Mo. 1; Robbins v. Boulware, 190 Mo. 33; Balance v. Gordon, 247 Mo. 119; Armor v. Lewis, 252 Mo. 568; Wilson v. Wilson, 255 Mo. l. c. 535.] It is clear from reading the above statutes, in connection with the former rulings of this court, that the probate court of Pike Coun ▮ Missouri, had jurisdiction over the homestead in question, if it became necessary to sell same for the payment of the debts due from the estate of Lemuel M. Wells.

III. The judgment and proceedings of the probate court of Pike County, Missouri, in respect to all matters within its jurisdiction, are not obnoxious to collateral attack [Thompson v. Pinnell, 199 S. W. l. c. 1013 and cases cited; Nodaway County v. Williams, 199 S. W. l. c. 226-7; Fitzgerald v. De Soto Special Road District, 195 S. W. l. c. 696-7; Wilson v. Wilson, 255 Mo. l. c. 537; Bingham v. Kollman, 256 Mo. l. c. 589; Harter v. Petty, 266 Mo. l. c. 303.] Having heretofore reached the conclusion that the probate court of Pike County, Missouri, was within its jurisdiction in the appointment of Theodore Purse, as administrator *de bonis non* of the estate of Charles C. Wells, deceased, of West Virginia; and no proceedings of the probate court thereafter having been shown to be void, we are of the opinion that the trial court reached correct conclusions in its disposition of the case.

*Judgments of Probate Court.*

IV. The cases of Myers' Guardian v. Myers Admr., 89 Ky. 442 and Pendergest v. Heekin, 94 Ky. 384, are strongly relied upon by appellants as supporting their contention that Lemuel M. Wells had

the legal right to dispose of his homestead by his will. The Kentucky statute was not like the Missouri law from 1875 to 1895, and, hence, the above decisions furnish no valid reasons for departing from the construction of the Missouri statute, supra, placed thereon by this court.

**Kentucky Statute.**

V. The case seems to have been fairly and carefully tried by the circuit court and the conclusions reached by the latter meet with our approval. We accordingly affirm the judgment.

**Conclusion.**

*Brown, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All concur, *Bond, J.,* in the result.