State ex rel. Blythe v. Trimble.

In any view of the case we think the plaintiffs had a right to sue.

Accordingly the judgment is affirmed.   All concur.

Headnote 1:   Trusts, 39 Cyc. 633.   Headnote 2:   **Deeds**, 18 C. J. sec. 130.   Headnote 3:   **Cancellation of Instruments**, 9 C. J. sec. 188.   Headnote 4:   **Cancellation of Instruments**, 9 C. J. sec. 17;   **Equity**, 21 C. J. secs. 253, 265.

---

## THE STATE ex rel. SAMUEL J. BLYTHE v. FRANCIS H. TRIMBLE et al., Judge of Kansas City Court of Appeals.

### Division Two, March 4, 1924.

1. **DEATH OF PLAINTIFF:** Revivor in Name of Discharged Administrator. Where plaintiff dies after the institution of his suit it cannot be revived in the name of his administrator who has made final settlement and been finally discharged.

2. ———: ———: **Amended Answer: Surprise.** Where, plaintiff alleged in his amended petition that he was the legally appointed, qualified and acting administrator of the original plaintiff, and defendant in his answer thereto has denied plaintiff's representative capacity and at the trial proves that plaintiff had in fact nearly a year previously made final settlement and been discharged as such administrator, the filing of an amended answer conforming to such proof can work no surprise upon plaintiff, and leave to file the same should be granted.

3. **INJUNCTION: Dissolution:** Suit on Bond: Two Suits: One Against Obligors. The plaintiff in an injunction, upon its dissolution, is liable on his bond for all damages to defendant resulting therefrom, whether they arise from plaintiff's own wrong, or the subsequent wrongs of his sureties concurring with his wrong, in bringing the suit; and the defendant in suing on the bond for damages cannot split his cause of action; if he has sued and recovered on the bond in a suit against the plaintiff alone, he cannot maintain another suit on the bond against the sureties alone, or against plaintiff and the sureties, for damages which might have been recovered in his first suit; and especially should this be the ruling where the plaintiff and his sureties were acting in concert. The defendant in the injunction, upon its dissolution, may sue all wrongdoers contributing to his injury, either separately or jointly, but for one trespass or wrong he can have but one satisfaction.

### *Certiorari.*

OPINION OF COURT OF APPEALS QUASHED.

*Waggenor, Challis & Crane* for relators.

(1)   The court erred in refusing to abate the action upon the motion of the defendants upon the showing made to the court that George A. Woolston had made a final settlement of the estate of A. B. Woolston, deceased, and had been discharged as such administrator.   Goebel v. Foster, 8 Mo. App. 443; Grayson v. Weddle, 63 Mo. 539; Prior v. Kiso, 96 Mo. 303.   (2)   The court erred in overruling the demurrers of the defendants, and each of them, for the reasons there was no evidence upon which to base the verdict, and for the reason there had been a recovery by the plaintiff upon an injunction bond which covered the same damages.   James v. Kansas, 83 Mo. 567; Bunten v. Railway, 50 Mo. 414; Smith v. City of Sedalia, 244 Mo. 107; Powers v. Railway Co., 159 Mo. 87.   (3)   The court erred in giving the instruction requested by the plaintiff, for the reasons the damages assessed on the injunction bond in the case of B. F. Moore et al. against Woolston et al., was *res adjudicata* of this action, and the payment of the judgment on the injunction bond by the defendants in this case was a satisfaction of the claim of the plaintiff herein.   The court erred in sustaining that ruling, because its rulings on the matter were contradictory to the decisions of the Supreme Court.   There was error in the rulings complained of:  (a)   Because under the laws of Missouri, before a temporary injunction can be granted and become effective, a bond must be given by the plaintiffs in favor of the defendants, that plaintiffs will pay all damages to the defendants caused by the issuance of the temporary injunction.   The bond is intended to cover all damages of every kind or nature.   Holloway v. Holloway, 103 Mo. 284.   (b)   The action for damages for injury done caused by the issuance of an injunction, wrongfully, is upon the bond given in the action, and a suit cannot be maintained for the issuance of an injunction wrongfully without a bond, unless the suit was brought maliciously.   St. Louis v. Gaslight Co., 82 Mo. 354; Keber v. Bank, 4 Mo. App.

195, 505; Teasdale v. Jones, 40 Mo. App. 243; Campbell v. Carroll, 45 Mo. App. 640; Hayden v. Keeth, 20 N. W. 195. (c) The recovery of the judgment and its satisfaction was *res adjudicata* of the present action for damages. There can be but one recovery for a single wrong. Barton v. Fish, 30 N. Y. 166; Ellis v. Crowl, 46 Kan. 100; Crockett v. Miller, 112 Fed. 735. (d) Under the bond, A. B. Woolston and G. A. Woolston could have recovered the damages sued upon in this action, on their motion to have the damages assessed in the action in Platt County. Alexander v. Colcord, 85 Ill. 324; Meysenburg, Trustee v. Schlieper, 48 Mo. 431. (e) If the damages to the plaintiff could have been recovered under the injunction bond, then the cause of action cannot be split up, and the recovery of a part of the damages bars the action for the balance. Stewart v. Dent, 24 Mo. 111; Railroad Co. v. Franke, 59 Mo. 355; Savings Bank v. Tracy, 141 Mo. 252; McReynolds v. Railway Co., 34 Mo. App. 581. (f) Where two or more contribute to a wrong, each is liable for the acts of all. Obermeyer v. Logeman Chair Co., 229 Mo. 97; Newcomb v. Railway Co., 169 Mo. 409. (g) There can be but one satisfaction for a wrong, and the payment of a judgment against one of the wrongdoers settled the matter for all the parties. Garner v. Henzig, 15 Mo. App. 591; Myers v. Block, 120 U. S. 211; St. Louis v. St. Louis Gaslight Co., 82 Mo. 349; Keber v. Bank, 4 Mo. App. 195, 505; Teasdale v. Jones, 40 Mo. App. 243; Campbell v. Carroll, 35 Mo. App. 640; Hayden v. Keeth, 20 N. W. 195. (h) Where two parties acting independently contribute to a wrong they are jointly liable, and as though they had been acting together. McDermott v. Railway, 87 Mo. 286; Neff v. City of Cameron, 213 Mo. 360; Bragg v. Met. St. Ry. Co., 192 Mo. 359. (i) Upon the dissolution of an injunction, the parties restrained may recover their damage of whatever kind or nature caused by the issuance thereof. Under such a bond, they can recover damages to real estate. Nancsmond Timber Co. v. Yountree, 29 S. E. 61; Gibson

v. Reed, 75 N. W. 1085; Holloway v. Holloway, 103 Mo. 284.

*Strop & Silverman* for respondents.

(1)   Relator's brief presents assignments of error as though this court were hearing the case upon appeal. No claimed conflict with decisions of this court is pointed out.   Such assignments will be disregarded by this court. State ex rel. v. Trimble, 253 S. W. 218; State ex rel. v. Allen, 253 S. W. 1013.   (2)   In ruling that the injury was subject to abatement and temporary in character, the Court of Appeals followed controlling decisions of this court.   Pinney v. Berry, 61 Mo. 359, 367; Van Hoozier v. Railroad, 70 Mo. 145; Dickson v. Railroad, 71 Mo. 575; Scheurich v. Electric Co., 188 S. W. 114.   (3)   The Court of Appeals did not contravene any decision of this court in ruling that the recovery upon the injunction bond of Moore was not *res adjudicata* of this action. (a)   The tort sued for in the case under reviw was the tort of relators.   (b)   The procuring of the injunction by Moore was not a contributing cause.   (c)   Moore was liable upon the injunction bond only for those damages which flowed naturally and proximately from the wrong committed by the procuring of the injunction, and damages caused by the independent tort of third persons were not recoverable upon the bond.   Albers Com. Co. v. Spencer, 236 Mo. 608; Holloway v. Holloway, 103 Mo. 273; Alliance Trust Co. v. Stewart, 115 Mo. 236; Gobbi v. Dileo, 34 L. R. A. (N. S.) 951, note.   (d)   Moore was not a joint tortfeasor with relators.   (e)   This court has never held that an injunction plaintiff may be held liable upon the injunction bond for damages caused by the independent tort of third persons committed while the injunction was in force, or even, upon such bond, for his own independent tort so committed.   There being no such decision of this court, the matter should be ended.   Nor is there reason to hold the injunction plaintiff liable for such damages.   The procuring of the injunction is not

the proximate cause of such damage, but the damage is the result of an independent, intervening, proximate and sole cause, namely, the tort of relators. Before one may be made to respond in damages, his wrongful act must have been the proximate cause of the injury suffered. Stanley v. Union Depot Company, 114 Mo. 606; Stepp v. Railroad, 85 Mo. 229; Butz v. Cavanaugh, 137 Mo. 503. (4) Relators assume both that Moore was a party to the suit and a joint tortfeasor with relators. The opinion does not state that Moore was ever a party to the action. The petition, to which the court will refer to ascertain the parties, does not name Moore as a party defendant. Relators contended that Moore had been a party to the suit in the beginning, while respondent in the case denied it. And the statement of respondents in the opinion, ''It makes no difference if Moore was originally made a party to the suit; it did not go to the jury against him so we need not go into that,'' was in answer to contentions of counsel, and not the statement of a fact that Moore had previously been a party.

HIGBEE, C.—*Certiorari* to review the opinions and judgment of the Kansas City Court of Appeals in Woolston v. Blythe et al., 251 S. W. 145, an action to recover damages alleged to have been sustained by the plaintiff, A. B. Woolston, by the diversion of the waters of Sugar Creek upon plaintiff's farm, in consequence of which he lost the use thereof for the years 1908, 1909 and 1910.

A brief statement will suffice. The suit was instituted August 17, 1911. It is asserted by the relators, but denied by the plaintiff, that B. F. Moore was joined as a co-defendant in the petition and that later the action was dismissed as to him. The opinion is obscure on this point; the original petition is not in the abstract. The plaintiff died before the trial, and the cause was revived in the name of George A. Woolston as administrator of his estate. The administrator filed a second amended petition February 12, 1918, on which plaintiff, by the

verdict, recovered judgment for actual and punitive damages, which was affirmed on appeal.

Plaintiff built a levee on the east side of his farm in the year 1907 to protect it from the overflow of the waters of Sugar Creek. In the fall of that year a freshet caused a break in this levee. In April, 1908, plaintiff undertook to repair this break, but before he had proceeded far with the work B. F. Moore sued out a temporary injunction restraining him from repairing it. Moore filed the usual injunction bond, with four of the relators as sureties thereon. On the day after this writ was served, the relators, with their employees, cut a swath thirty or forty feet wide through the willows on a twenty-five-acre tract lying east of plaintiff's farm, removed a section of plaintiff's fence at the west end of the swath, and cut down the west bank of the creek at the east end thereof, so that when the floods came and the rains descended, plaintiff's farm was flooded, and he lost the use thereof for the years 1908, 1909 and 1910. The injunction was dissolved in the year 1910, when plaintiff at once repaired his levee. Plaintiff's damages on the injunction bond were assessed at $1600 and same were paid. These did not include damages for loss of the use of the farm. This suit was thereafter instituted on August 17, 1911.

The second amended petition, alleging that George A. Woolston was the legally appointed, qualified and acting administrator of the estate of A. B. Woolston, deceased, was filed on February 12, 1918, the day of the trial. The opinion recites this allegation was denied in the answer filed on the same day. It also states that at the close of plaintiff's case, the defendant "suggested and proved that on April 4, 1917, the plaintiff had filed his final settlement and had been finally discharged as administrator of the estate of A. B. Woolston, deceased," and moved the court to abate the action, which motion was overruled. The defendant offered, and was refused leave, to file an amended answer setting up those facts.

The court instructed the jury "that they should disregard all evidence of the judgment assessing damages upon the injunction bond in the Moore Case; that said judgment constituted no defense in this case." At the close of paragraph 20 of the learned opinion, the court said:

"The witness Barnes, as shown in respondent's additional abstract of the record, testified that there was no water running through the swath at the time the willows were cut and being placed. No damages to the land or crops were asked or assessed upon the bond. However, Woolston was not permitted to repair his levee during the pendency of the injunction suit, and no doubt he could have recovered in that suit for damages, if any, resulting to him by reason of such prevention, but he could not recover any damages against the defendants in the case at bar for the reason that they were not parties to the suit, and, as before stated, this cause of action is for damages caused by their acts alone. The petition asked only for those damages, and the jury in plaintiff's instructions were confined to such damages as were suffered by plaintiff's intestate, caused by the affirmative acts of the defendants pleaded in the petition. We think, then, that this suit was maintainable against the present defendants in the case, and that the action of the court was proper. It makes no difference if Moore was originally made a party to this suit; it did not go to the jury against him, so we need not go into that. The judgment in the injunction suit is not *res adjudicata.*" [251 S. W. l. c. 154.]

In the learned opinion, at page 149, it is also said:

"At the close of plaintiff's case, defendant suggested and proved that on April 4, 1917, the plaintiff had filed his final settlement and had been finally discharged as administrator of the estate of A. B. Woolston. Defendants then moved the court to abate the action because George A. Woolston was not then such administrator. The motion to abate was overruled by the court, where-

302 Mo. Sup.—45.

upon defendants asked leave to amend their answer by setting up said facts. The court first ruled that the answer could be so amended, and that the plaintiff might move to strike out the amendment, and this was done."

I. It appears from the learned opinion that at the close of plaintiff's evidence in chief, the defendants suggested and "proved" that on April 4, 1917, the administrator had filed his final settlement and Revivor in Name was discharged and moved the court to of Discharged Administrator. abate the action because George A. Woolston was not then such administrator. After arguments of counsel, the court refused leave to file the amended answer averring the final settlement and discharge of the administrator on April 4, 1917, in conformity with the proofs already admitted in evidence. The learned Court of Appeals justifies this refusal under Sections 1346, 1347 and 1351, Revised Statutes 1919, which deal with the revival of actions in case of the death, marriage or disability of a party to an action. Obviously, these sections of the statutes have no application or relevancy to the case in hand.

The death of A. B. Woolston was suggested and the cause was revived in the name of George A. Woolston as administrator of the deceased, and the second amended petition was filed on February 12, 1918, averring that he was then the legally appointed, qualified and acting administrator of said deceased, nearly a year after he had been discharged. There was then no such pretended administrator or administration in existence. George A. Woolston was no longer the personal representative of the deceased A. B. Woolston and had no authority to represent his estate or to act therefor. The administration had been closed; he was *functus officio*. The order of revival was without warrant and unauthorized by the statute. [Prior v. Kiso, 96 Mo. 303, 314.] "The administrator (Banter) had been discharged, therefore could no longer act." [Grayson v. Weddle, 63 Mo. 539; See also Wright v. Hetherlin, 277 Mo. 99.]

State ex rel. Blythe v. Trimble.

In the circumstances of this case there can be no merit in the contention that the granting leave to file the amended answer conforming to the proof already adduced would work a surprise to the plaintiff, who was masquerading as administrator, and that its filing was discretionary with the court. The original answer denied his representative capacity. We think the learned opinion is clearly in conflict with the decisions of this court cited supra.

II. The opinion approves an instruction given the jury that "they should disregard all evidence of the judgment assessing damages upon the injunction bond in the Moore Case; that said judgment constituted no defense in this case." [Par. 20.] The damages on the bond were assessed and paid before this suit was instituted.

Concurrent Damages.

A. B. Woolston's land was protected from overflow water from Sugar Creek by a levee on the east line of his farm. A freshet in 1907 had caused a washout in this levee. The Moore injunction restrained him from repairing this gap. As stated in the opinion, this injunction did not permit him to repair this break in the gap during its pendency. On its dissolution in 1910, he immediately repaired the gap. The injunction tied his hands and was the proximate cause of the loss of the use of his farm during the years 1908, 1909 and 1910. It is not contended that the levee, if repaired, would not have averted the water from his farm. The injunction bond referred to in the opinion is in the form required by the statute (Sec. 1957, R. S. 1919); it is in the sum of $2000, and is conditioned that the obligors shall pay all sums of money, damages and costs that shall be adjudged against them if the said injunction shall be dissolved.

The general rule is that the damages to be assessed on the bond on the dissolution of the injunction "are such and such only as are actual and the proximate result of the restraining order." [Holloway v. Holloway, 103 Mo. 284; Meysenburg v. Schlieper, 48 Mo. 431; Al-

bers Comm. Co. v. Spencer, 236 Mo. 630; Kennedy's Administratrix v. Hammond, 16 Mo. 341.] The obligors were clearly liable for all damages directly occasioned by the injunction which expressly restrained Woolston from closing the break in the levee. The direct and inevitable result of this was that the water continued to flood his farm and he lost the use of it during the years mentioned. This loss was caused by the injunction and was clearly an element that might have been considered in the assessment of damages on the bond. This is conceded in the opinion.

III. It is argued, however, that the damages suffered by the loss of the use of the farm were caused by the acts of the defendants in turning the water onto the Woolston farm. The most that can be claimed Splitting in this respect is that what they did was a contributing cause. If Woolston had been permitted to repair his levee the water could not have reached his land and the acts of the defendants would not have harmed him. But, conceding that the defendants acted independently of Moore, whether concurrently or subsequently, their acts contributed to the damages Woolston sustained in consequence of the injunction which restrained him from repairing his levee. In either case Moore was liable on his bond for all the damages caused by the waters flowing onto the farm through the broken levee. [Bragg v. Met. St. Ry. Co., 192 Mo. 359; Newcomb v. Railway Co., 169 Mo. 422.]

*Splitting Cause of Action.*

In Neff v. City of Cameron, 213 Mo. 1. c. 360, it is said:

"It is elementary in the common law that the one who has suffered wrong may have his amends, indemnity or reparation from any one participating in that wrong. [Bragg v. Railroad, 192 Mo. 1. c. 359 et seq.] Thus, if A and B wrong C, C may recover his damages from either A or B or from both. As put by Bishop (Bishop on Non-Contract Law, sec. 573), 'A person who has done any part of a wrong working harm to another,

or even contributed his will to it, is responsible to him in damages for the entire harm, however many other individuals, forces and things may have co-operated in bringing about the mischief.' "

We quote also from Brash v. City of St. Louis, 161 Mo. 433, 437:

"The general doctrine on the question in issue on the instructions is thus stated in 1 Shearman & Redfield on Negligence (5 Ed.) sec. 39; 'It is universally agreed that if the damage is caused by the concurring force of the defendant's negligence and some other force for which he is not responsible, including "the act of God," or superhuman force intervening, defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that if the negligence of the defendant concurs with the other cause of the injury in point of time and place, or otherwise so directly contributes to the plaintiff's damage, that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated the interference of the superior force, which concurring with his own negligence produced the damage. But if the superior force would have produced the same damage whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury.' "

Moore being concededly liable on his bond for all the damages occasioned by the injunction, upon its dissolution Woolston was entitled to have all such damages assessed. He was not allowed to split his cause of action. By this recovery of a part of his damages his entire cause of action was merged in the judgment. [Wheeler Savings Bank v. Tracey, 141 Mo. 258, and cases cited.]

IV.   Woolston might have sued all the wrongdoers contributing to his injury, either separately or jointly,

State ex rel. Blythe v. Trimble.

One Satisfaction. and prosecuted his action or actions to judgment, "but for one trespass or wrong he can have but one satisfaction." [Page v. Freeman, 19 Mo. 422.] "A sufficient atonement having been made for the trespass, the whole matter is at an end. It is as though the wrong had never been done." [Dulaney v. Buffum, 173 Mo. l. c. 16, 17.] A release of one of several joint tortfeasors operates as a discharge of the others. [Hubbard v. Railway Co., 173 Mo. 255, cited in Judd v. Walker, 158 Mo. App. 165.]

V. Aside from the foregoing considerations, there was ample evidence, as shown by the learned opinion, to Concert of Action. warrant a finding by the jury that in suing out the writ of injunction Moore and the relators were acting in concert. Four of the relators are sureties on the injunction bond. On the day after the service of the writ, pursuant to previous arrangement, the relators appeared upon the twenty-five-acre tract and, under the protection of the injunction, cut the swath through the willows and later did the other acts complained of. At least a jury might have so found. The giving of the instruction referred to in paragraph 2 was prejudicial error.

We think the opinion of the learned Court of Appeals is contrary to the last previous rulings of this court and its judgment is accordingly quashed. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is hereby adopted as the opinion of the court. All of the judges concur; *White, J.,* in paragraph 1 and the result.

ON MOTION FOR REHEARING.

HIGBEE, J.—Counsel for respondents earnestly insist that the refusal of the trial court, at the close of the evidence for plaintiff, to permit the relators (defendants in the trial court) to file an amended answer pleading that

the plaintiff, administrator of the estate of A. B. Woolston, prior to the trial, had filed his final settlement and had been discharged, was a matter within the sound discretion of the court and not reviewable on appeal. They refer to the statement of the trial court (251 S. W. l. c. 149) in which the learned judge, *inter alia,* said:

"Therefore the court is in the position here; if I permit this answer to be filed under my notion of the case, I will have and I will be compelled to abate the suit; that would follow. Therefore it comes down to a matter of pure and simple discretion. This amendment is not an amendment that goes to the merits of the case; has nothing to do with the justice between these parties or adjudicating their rights . . . In view of the fact that, if I refuse this answer to be filed, the case automatically goes on, and the case will be tried and tried out on the issues, and decided on its merits. On the other hand, as I said, if I permit it to be filed, then it follows inevitably that the case must abate, . . . Therefore the court will not grant leave to file the amended answer."

I.    Our decisions on the right to amend a pleading to conform to the facts proved are so numerous and uniform that we did not discuss them in our opinion, but as counsel insist that the privilege of amendment is discretionary and is not subject to review on appeal, we will refer to some of our decisions.

Respondents call attention to Beattie Mfg. Co. v. Gerardi, 214 S. W. 189; Levels v. Railroad Co., 196 Mo. l. c. 614, and Dudley v. Railroad Co., 238 Mo. 184, cited and considered by the Court of Appeals. [See also Gross v. Watts, 206 Mo. 392.] In neither of these cases was the amendment offered to be made to conform the pleading to the facts proved. In the Dudley Case, VALLIANT, J., said, on page 186:

"It has been held that an amendment may be made after the close of the evidence 'to conform to the proof.' [Baltis v. Friend, 90 Mo. App. 408.] This amendment was asked and granted on that ground, 'to conform to the

proof.' But there was no proof in the case to form a pretext for the amendment. . . ''

The opinion of the Court of Appeals states that George A. Woolston on the day of the trial, February 12, 1918, filed an amended petition ''alleging that he had been appointed and was then the duly qualified and acting administrator of the estate of Alfred B. Woolston. At the close of the plaintiff's case, defendant suggested and proved that on April 4, 1917, the plaintiff filed his final settlement and had been finally discharged as administrator of the estate of A. B. Woolston.''

It does not appear from the opinion that any objection was made to the admission of this evidence, nor is there any contention that the administration had not been closed and the administrator discharged more than ten months before the second amended petition was filed or that the action should not have abated. The contention now is that the proof was not admissible under a general denial and that the discretion of the court in refusing to permit the defendants to file an amended answer at the trial, pleading the final settlement and discharge of the administrator to conform to the facts proved, is not reviewable on appeal. It is undoubtedly true that if the defendants intended to deny the appointment of plaintiff as administrator the answer should have specifically denied the alegations of the petition in that respect. Until such allegation was specifically denied, plaintiff was not required to prove his appointment. [Levels v. Railroad, supra, 1. c. 614.] But our attention has not been called to any decision of this court holding that under a general denial the final settlement and discharge of the administrator may be shown. We have held that any fact, the effect of which is to show that an essential statement in the plaintiff's cause of action is untrue, may be proven under the general denial and therefore should not be specifically pleaded. [Bolton v. Mo. Pac. Ry. Co., 172 Mo. 102.] At common law, where an administrator or executor pending suit resigns, is removed or discharged,

this fact must be brought to the knowledge of the court by a plea in abatement *puis darrein* continuance, or a judgment rendered against defendant will bind him.   [24 C. J. 832, sec. 2091.]

The learned opinion states that upon proof of the discharge of the administrator, the defendants moved the court to abate the action because George A. Woolston was not then such administrator; that said motion was overruled, whereupon the defendants asked leave to amend their answer by setting up said facts.   Is the learned opinion of the Court of Appeals, in holding that the trial court committed no error in refusing to permit the defendants to amend their answer to conform to the facts proved, in harmony with the controlling decisions of this court?

In Montgomery v. Mo. & Kan. Inter. Ry. Co., 289 Mo. 288, 233 S. W. 189, it was held that the trial court abused its discretion in striking out an amended petition and the judgment was reversed.   WALKER, J., on page 304, said:

"While the power of the courts in regard to the amendment of pleadings had its origin in the common law, this power has been given legislative recognition in many states, the effect of which is to amplify and liberalize the courts' rulings in that regard, limited only by sound judicial discretion applicable to the facts in each particular case.

"The statute of this State authorizing such amendments is exceedingly liberal and provides that: 'The court may, at any time before final judgment, in furtherance of justice, and on such terms as may be proper, amend any record, pleading, process, entry, return or other proceedings, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved.'   [Sec. 1274, R. S. 1919.]

"The liberal trend of this statute prompts epigrammatic interpretation of same that the rule is to allow amendments; the exception to refuse them; and that the court should not be less liberal in the construction of the statute than it is in its declarations. [Corrigan v. Brady, 38 Mo. App. l. c. 657; House v. Duncan, 50 Mo. 453; Lottman v. Barnett, 62 Mo. 159; Ensworth v. Barton, 67 Mo. 622; Carr v. Moss, 87 Mo. 447.]"

In Price v. Hallett, 138 Mo. 561, 574, GANTT, J., said:

"Had a timely objection been made when this evidence tending to show an estoppel was offered as against Benecke, it would have been excluded, or the court would have permitted an amendment pleading such estoppel, but no such objection appears to have been made at that time and now that the evidence has been heard and the instruction given upon it, we think it is too late to raise the question of pleading on that point. We shall treat the record now as if the amendment had been prayed and permitted. [Baker v. Railroad, 122 Mo. 533; Darrier v. Darrier, 58 Mo. 222.]

"It has been held in New York under the code that where an amendment to a pleading might have been ordered by the court on trial it may even be amended on appeal so as to conform to the proofs."

In Newham v. Kenton, 79 Mo. 382, it was held that if a state of facts not pleaded is developed at the trial the pleadings should be amended. At the foot of page 385, PHILIPS, C., said:

"In Harris v. Railroad Co., 37 Mo. 310, WAGNER, J., with emphasis, said: 'The statute permits a party to amend his petition after his evidence has been given, to make it conform to the proofs; but no such thing was attempted in this case.'"

In Carr v. Moss, 87 Mo. 449, HENRY, C. J., said:

"When the application was made by plaintiff to amend the petition, no final judgment had been rendered. Testimony had been taken, but the court ordered the referee to take none, and before additional evidence was

taken by him, the plaintiff made his application to amend his petition to make it conform to the facts proved. The grounds stated in the motion show that they were not frivolous, but that they went to the merits of the controversy. The statute in relation to amendments is liberal, and the courts should be, at least, as lenient and liberal, in such matters, as the statute.

"We are not disposed to interfere with the trial courts in the exercise of the discretion with which the statute has invested them, except where there has been a manifest abuse of that discretion, and where, before final judgment, an amendment of a petition is asked, in order that the plaintiffs may have such redress as the proof taken may show him entitled to, we think it an abuse of the discretion given to the court to refuse it. [Anderson, Admr., v. Hance, 49 Mo. 159.] We are not to be understood as reflecting upon the circuit judge, who acted, no doubt, as he thought his duty required, but we entertain a different opinion of his duty from that which seems to have influenced his action."

Amendments are favored and should be liberally allowed in furtherance of justice. [House v. Duncan, 50 Mo. 453, cited approvingly in Wright v. Groom, 246 Mo. 163. See also Broyles v. Eversmeyer, 262 Mo. 384, 171 S. W. 334, and Kregain v. Blake, 239 S. W. 495, 498-9.] The evidence that the plaintiff had been discharged as administrator disproved an essential allegation in the second amended petition; the amendment did not change substantially the defense, but simply conformed the answer to the facts proved. We think the opinion of the learned Court of Appeals in this respect is in conflict with the controlling decisions of this court.

In the argument in support of the motion for rehearing, counsel say we are in error in stating that the death of A. B. Woolston was suggested and the cause was revived on the day the second amended petition was filed; that in fact the order reviving the cause was made *several* months before the filing of the amended petition. Counsel do not say it was made before the administrator made his

final settlement and was discharged. If it was made before his discharge the statement, in our opinion, that the order of revival was without warrant and unauthorized by the statute, should be withdrawn. The date of the revival of the cause is not shown either in the opinion of the Court of Appeals or in counsels' argument. The statement that the cause was revived several months before the filing of the second amended petition is evasive. The matter, however, is unimportant.

II.   Respondents insist "there is not and cannot be any causal connection between the wrongful procuring of an injunction preventing the repairing of a levee and the independent, separate tort of other persons in diverting the waters of a living stream upon the person enjoined." Again: "Relators attempt to draw the inference from the opinion of the Court of Appeals that Moore and relators were acting in concert in diverting Sugar Creek. There is nothing in the opinion upon which this statement can be mantained.  The opinion states that relators timed their acts with reference to the time of the procuring of the injunction by Moore, but there is no word in the opinion that Moore was any party to this arrangement on the part of relators.  To the contrary, the conclusion to be drawn from the opinion is this that the Court of Appeals found that Moore was in no way connected with the act of relators in diverting the stream."  They further say that whether or not the procuring of the injunction order was the proximate cause of the damage was a question for the determination of the Court of Appeals and not of this court.  The opinion states:  "Woolston was not permitted to repair the levee during the pendency of the injunction suit and no doubt he could have recovered in that suit for damages, if any, resulting to him by reason of such prevention, but he could not recover any damages against the defendants in the case at bar for the reason that they were not parties to the suit and, as before stated, this cause of action is for damages caused by their acts alone." The foregoing statements, in the main, are plainly conclusions of law.

The statement that the damages sued for were caused solely by the acts of the defendants is also a mere conclusion and inconsistent with the particular facts stated in the opinion. The learned opinion (251 S. W. l. c. 148) states:

"   . . . that in the spring of 1908 Woolston commenced to repair this break in his levee, but before he could complete this work he was stopped by a temporary restraining order instituted in the name of B. F. Moore. At the trial this temporary injunction was dissolved. The appellants herein were sureties on Moore's injunction bond.

"A week or ten days before the injunction suit was filed and the injunction served, defendants agreed among themselves to cut the willows from the creek bank to Woolston's land. The time fixed for this work was the day after the service of the order of injunction.

"On the day Woolston was notified of the injunction, defendants herein and their employees appeared on 'No Man's Land,' and began cutting a swath through the willows. . . . There was no water running into the swath at that time. A substantial wire fence was upon the east line of Woolston's land. Where the cut swath encountered this fence, the fence posts were cut off even with the ground, the wire cut, and the section thereof so cut was swung backward and the banks of the creek at that point cut down to the height of the levee. All this was accomplished within two or three days after the injunction was served. The record further discloses that a few days after this there came a freshet, the bank broke," etc.

From the particular facts as above stated, it is apparent that a court or jury might infer that Moore and the sureties on his bond were acting in concert. But whether the relators were acting independently or in concert with Moore, we think is immaterial. No doubt the wrongful acts of the defendants increased the flow of water through the crevasse in the levee, but from the facts as stated in the opinion of the Court of Appeals it is

clear that the loss of the use of the farm resulting from the injunction could not be separated from that caused by the acts of the defendants. In fact, it is apparent that if Woolston had repaired the crevasse in the levee his farm would not have suffered by the acts of the defendants. The injunction restrained him from doing this.

In paragraph 2 of the opinion, we showed by reference to numerous decisions that the contention that there can be no causal connection between the procuring of the injunction and the independent tort of the relators is directly opposed to the controlling decisions of this court. "A person who has done any part of a wrong working harm to another, or even contributed his will to it, is responsible to him in damages for the entire harm, however many other individuals, forces and things may have co-operated in bringing about the mischief." [Neff v. Cameron, 213 Mo. 350, 360, and other cases cited.]

In Newcomb v. N. Y. Railroad Co., 169 Mo. 422, it was said:

"A defendant may be liable even if the accident was not caused by his *sole* negligence. He is liable if his negligence concurred with that of another, or with the act of God or with an inanimate cause, and became a part of the direct and proximate cause although not the sole cause.

"Thompson on Negligence, volume 1, section 75, thus states the rule: 'If the concurrent or successive negligence of two persons, combined together, result in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury. Thus, A leaves his horse and cart standing in the street, without any person to watch them, and a passer-by strikes the horse, in consequence of which damage ensues. A is answerable for such damage. An omnibus overturns, precipitating a passenger into the lock of a canal. A third person, for whose acts the proprietor of the omnibus is not responsible, lets the water into the canal, in consequence of which the passenger is drowned. The proprietor of the omnibus must pay damages for the

death of the passenger. This is also illustrated by that numerous class of cases where travelers are injured by reason of defects in highways. As elsewhere seen, the traveler may maintain an action either against a municipal corporation, or against the private wrongdoer who caused the defect; and the municipal corporation, if compelled to pay damages, may maintain an action against the private wrongdoer for reimbursement. Consequently, a defendant, whose negligence was a procuring cause of an injury, cannot excuse his negligence by setting up the concurring negligence of a third person. For example, where A negligently placed on a sidewalk an iron post, used as a barber's pole, and B negligently backed his wagon against it, whereby it was knocked over, striking C and injuring him, it was.held that the negligence of A did not prevent C from recovering damages of B. So, if through the negligence of a railway company, the employee of another company receives an injury, the fact that the negligence of other employees of the latter company, who were fellow-servants with the injured employee, also contributed to the injury, does not relieve the former company from liability.' ''

Again, on page 426:

''Bishop on Non-Contract Law, section 518, gives the reason underlying the rule as follows:

'' 'Sec. 518. The fundamental doctrine is, that, since the habitations and life of man are in the midst of constantly active forces in nature, and his necessities compel him to be perpetually active also, it is not possible in jurisprudence, nor would it be just, to limit one's responsibility for harm inflicted on another through his acts, to the particular injuries whereof those acts are the sole cause. Indeed, a sole cause is a thing seldom found in our complicated world. Nor would it be practicable, nor yet is it demanded by any principle of justice, to take into. the account all the combining causes of an injury, and charge the author of each cause with simply his proportion of the damage. Therefore, the rule of the law is,

that a person contributing to a tort, whether his fellow-contributors are men, natural or other forces, or things, is responsible for the whole the same as though he had done all without help. The limit to this rule, in civil jurisprudence, is simply what is required by another rule; namely, that 'the injured person is only entitled to one compensation.' " [See also Wright v. K. C. Terminal Ry. Co., 195 Mo. App. 484, and cases cited.]

In Carr v. Auto Supply Co., 293 Mo. 568, 239 S. W. 827, the court said:

"Instruction number two given by the court at the request of the plaintiff, clearly and distinctly told the jury that if the defendant's chauffer failed to give the statutory signal of his intention to turn across the street to the left in front of the automobile in which plaintiff was riding, and that such failure, either solely or in conjunction with the condition of the street at such point, and the act of the chauffer in charge of the automobile in which plaintiff was riding, in turning said automobile to the left, caused the automobile in which plaintiff was riding to be overturned and plaintiff to be injured, then their verdict should be for plaintiff. This distinctly embodied the doctrine of concurring negligence which is recognized in this State, as well as in nearly every other jurisdiction in which the doctrine of the English common law with reference to liability for negligence prevails. It is stated in Shearman and Redfield on Negligence (6 Ed.) sec. 122, as follows:

" 'Concurrent, as distinguished from joint negligence, arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs or co-operates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial.'

State ex rel. Blythe v. Trimble.

"It has been approved and enforced in this State in many cases among which are the following: Hickman v. Union E. L. & P. Co., 226 S. W. 571; Vessels v. K. C. L. & P. Co., 219 S. W. 80; Campbell v. United Railways, 243 Mo. 141; Kreymeyer v. Transit Co., 220 Mo. l. c. 655; Straub v. St. Louis, 175 Mo. 413; Brennan v. St. Louis, 92 Mo. 482; Donoho v. Vulcan Iron Works, 75 Mo. 401; Newcomb v. N. Y. Railroad Co., 169 Mo. 409; Bassett v. St. Joseph, 53 Mo. 290; Vogelsang v. St. Louis, 139 Mo. 131; Harrison v. K. C. Electric Co., 195 Mo. 606."

On the facts stated in the opinion, whether defendants acted independently of or in concert with Moore, was a question of fact. They were jointly and severally liable for all the damages resulting to Woolston from the loss of the use of his farm by the overflow thereof during the pendency of the injunction. The learned opinion, in announcing a contrary conclusion and in approving the instruction referred to in paragraph 2 of our opinion, is directly in conflict with the foregoing controlling decisions of this court. The motion for rehearing and to transfer this cause to the Court in Banc are overruled. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is hereby adopted as the opinion of the court. All concur.

---

Headnote 1:   Abatement and Revival, 1 C. J. sec. 445.   Headnote 2: Pleading, 31 Cyc. 391.   Headnote 3:   Injunctions, 32 C. J. secs. 796, 773.